DAIRYMEN'S LEAGUE CO-OPERATIVE ASSOCIATION, INC., Plaintiff, *v.* GEORGE J. WECKERLE and Others, Defendants.

Supreme Court, Erie County, July 23, 1936.

*Babcock, Sullivan & Weaver* [*Philip A. Sullivan* and *Seward A. Miller* of counsel], for the plaintiff.

*Merwin, Paul, Lesswing & Hickman* [*Wortley B. Paul* and *George Clinton, Jr.*, of counsel], for the defendants.

NORTON, J.   This is a motion for an order restraining defendants during the pendency of the action from soliciting within Erie county the customers of, and from serving any of the plaintiff's customers who were customers of Wm. Weckerle & Sons, Inc., at the time the property, business and good will of said Wm. Weckerle & Sons, Inc., were sold to and acquired by plaintiff, including the customers

named on a list furnished defendants by plaintiff in February, 1936; and also from using the name " Weckerle " in conjunction or connection with the business of buying and/or selling milk and/or milk products within the county of Erie; and also from using the name " Weckerle " in advertising within the county of Erie for the purchase and/or sale of milk and/or milk products within Erie county.

This action is brought by plaintiff to recover a judgment granting to plaintiff, permanently, substantially the same relief which it seeks to temporarily procure upon this motion.

Among the undisputed facts bearing on the issues in the action are the following:

For many years prior to February, 1932, the defendants George J. and Henry P. Weckerle and their brother, Gottlieb F. Weckerle, and their sisters, Rose S. and Dorothy C. Weckerle, had, first as a partnership under the firm name of William Weckerle & Sons, and in the later years as a corporation, under the name of William Weckerle & Sons, Inc., of which they were the sole stockholders and officers, conducted a milk business within the county of Erie, the retail selling of the milk being mostly within the city of Buffalo.

The defendants George J. and Henry P. Weckerle were officers of the corporation; they were the principal managers of its business and affairs and through their active, aggressive and forceful efforts and methods it had become by 1932 one of the three largest retail milk dealing concerns in Erie county, having upwards of sixty wholesale and retail milk routes in the city of Buffalo and vicinity and serving, approximately, 13,000 customers.

The name " Weckerle " and the words " Weckerle Milk " had, through their use on its wagons, bottles and receptacles, and as part of newspaper, billboard and other advertisements, of William Weckerle & Sons, Inc., become a trade name of its business and inseparably a part of the good will thereof.

On February 1, 1932, the five Weckerles sold the business, assets and good will of said William C. Weckerle & Sons, Inc., to the plaintiff for $1,000,000; of that purchase price over fifty per cent thereof was paid by plaintiff for the good will of said business.

Such sale was effectuated by a contract in writing, which in addition to selling and transferring the business, its assets and good will, contained covenants restricting the sellers, including the defendants George J. and Henry P. Weckerle, from re-engaging in the milk business in Erie county, and from using the name " Weckerle " in or in connection with any milk business in Erie county, and from soliciting trade from any of the customers of the business sold to plaintiff.

Upon the consummation of the sale, the defendants George J. and Henry P. Weckerle, and their sister, Rose Weckerle, entered the employment of the plaintiff at its "Weckerle Branch" in Buffalo, the defendants George J. and Henry P. Weckerle continuing in such employment until September 1, 1932, and their sister, Rose Weckerle, being still in plaintiff's employ.

In July, 1935, the defendants George J. and Henry P. Weckerle, alleging there was a difference of opinion between them and plaintiff as to the meaning and effect of the said restrictive covenants in the contract, brought an action against plaintiff in the Supreme Court, Erie county, asking for a judgment determining and declaring their rights under the provisions of such restrictive covenants. The action was brought to trial, and upon the trial the parties entered into a written stipulation, which they also did in open court, construing, determining and declaring the meaning and application of said restrictive covenants; and pursuant to such stipulation, and upon motion of the plaintiffs in that action, the defendants George J. and Henry P. Weckerle in this action, judgment was granted by the court and entered in the Erie county clerk's office November 18, 1935, which by its terms construed, determined and declared the meaning and application of said restrictive covenants, and, as so construed, determined and declared, confirmed said restrictive covenants, so far as the same are pertinent to this motion, as follows:

That the term during which the defendants George J. and Henry P. Weckerle were prohibited from engaging directly or indirectly, as principal, employee or otherwise, in the milk business in Erie county had terminated; and that they were free to solicit the milk or milk product trade of, and serve milk or milk products to any persons "who shall not have been served by the business since May 1, 1935, and prior to November 1, 1935," and said judgment then in definite terms provided: "That said George J. Weckerle and Henry P. Weckerle shall not have the right, either directly or indirectly for themselves or any other person, firm or corporation, until November 1, 1940, to solicit the milk or milk product patronage, or trade of, or serve milk or milk products to, any persons served by the business since May 1, 1935, and prior to November 1, 1935, set forth on the list as provided in the next paragraph or be connected in any capacity with or interested in any person, firm or corporation which so solicits or serves, either directly or indirectly."

The judgment then provides for the making, delivery and checking of such list and continues as follows:

"That that part of said paragraph No. 8, which reads * * * and Sellers further agree that they will not at any time after change

of possession hereunder, be directly or indirectly connected with any individual or concern in any branch of the milk or milk products business in Erie County, which uses the word ' Weckerle ' as part of their or its corporate, individual, business, partnership or trade name, be and the same hereby is construed to mean and imply, in addition to and amplification of the said words just quoted, that said George J. Weckerle and Henry P. Weckerle will not at any time after change of possession hereunder be directly or indirectly connected with any individual or concern in any branch of the milk or milk products business in Erie County which uses the word ' Weckerle ' as part of his or its corporate, individual business, partnership or trade name, or in any manner so that same is used and designed to reach the attention of consumers or producers or prospective consumers and producers of milk and milk products, and in particular but without limitation, on bill heads, any kind of advertising or other form of public announcement, letters and letter heads, vehicles, containers, tags and labels, or employees' uniforms, except that the same shall not be construed to prohibit said George J. Weckerle and Henry P. Weckerle from using their names on personal business cards, business stationery not designed to be sent to or used with producers or consumers, corporate records and documents, publications printed by business rating agencies, and listings other than advertising matter, in the Buffalo City Directory; other than this, that said George J. Weckerle and Henry P. Weckerle have the right to advertise their milk and milk products business; and it is further

" Adjudged and decreed that said contract shall be construed to mean that the plaintiffs, or either of them, will not intentionally, directly or indirectly, or through any person, firm or corporation with whom they or either of them are connected or interested, do anything detrimental to the good will of the business heretofore sold to the defendant, including derogatory statements, or interfere with or solicit producers under contract with the defendant, or make any derogatory or injurious statements regarding defendant."

About February 12, 1936, defendants George J. Weckerle and Henry P. Weckerle bought control of the defendant Sterling Amherst Farm's Dairy, Inc., the said George J. Weckerle becoming president, and Henry P. Weckerle vice-president thereof, and they at once took over the control and management of the business of that corporation. Shortly thereafter articles and advertisements were published in various newspapers in the city of Buffalo announcing the purchase of said business by the said defendants George J. and Henry P. Weckerle, their official connection with such business, and purporting to give their history and training in the milk business

as acquired in connection with the business which plaintiff had bought; and printing their pictures in conjunction with at least one of such articles or advertisements; and in some of such articles also solicited patronage in the following language: " Call University 6600 and you will be served promptly. The Sterling Amherst Farms Dairy is as close to you as your phone, and the new line up, George J. Weckerle, president and Henry P. Weckerle, vice president, is additional assurance that you will be served the very best the country produces."

Upon such articles or advertisements coming to plaintiff's attention, plaintiff delivered to the defendants George J. and Henry P. Weckerle its list of customers as provided in the judgment. The defendants, since the delivery of such list, have solicited and served twenty or more retail and two wholesale customers of plaintiff who were named on such list, some of whom were solicited after the summons herein was served and some others after the service of the show cause order herein. Notwithstanding plaintiff sent notices to each of the defendants calling attention to the provisions of said judgment and demanding that they refrain from violating its terms, the defendants continued to solicit and serve the listed customers of plaintiff. They also published in various newspapers and other publications in the city of Buffalo, advertisements of the milk of the defendant Sterling Amherst Dairy, Inc., printing underneath and as a part of such advertisements, the words " owned and operated by ' Weckerle ' himself," such an advertisement appearing as late as June 24, 1936, upon the score cares of the Shrine and Knights of Columbus annual ball game.

In the May 29, 1936, issues of the three leading daily newspapers of the city of Buffalo, the defendant Sterling Amherst Farms Dairy, Inc., published advertisements of its business and products, each of which advertisements contained the following: " Owned and operated by George J. and Henry P. Weckerle (not associated with the Dairymen's League)." Defendants also sent out advertising circulars or blotters, in which they solicited trade, and stated the defendant Sterling Amherst Farms Dairy, Inc., is " owned and operated by Weckerle himself," and said defendants have delivered milk in bottles with hangers theeon reading in part, " Sterling Amherst Farms Dairy, Inc., owned and operated by George J. and Henry P. Weckerle."

After William Weckerle & Sons, Inc., transferred all its property, assets and good will to its five stockholders, the five Weckerles, and they had in turn, pursuant to the contract, transferred the same to plaintiff, the William Weckerle & Sons, Inc., was duly dissolved, and

on the same day plaintiff, through certain of its officers, duly incorporated Wm. Weckerle & Sons, Inc., with its office in New York city, for the purpose, as plaintiff claims, of holding the name of " Wm. Weckerle & Sons, Inc.," and the Weckerle name and preventing their being assumed by any other corporation. Ever since acquiring such business, plaintiff has conducted it under the name of The Dairymen's League Co-Operative Association, Inc., Weckerle Branch; and in all of its advertising of the business, upon its delivery trucks, bottles and other delivery equipment and containers, it has used and stressed the " Weckerle " name to identify its business and output.

I have stated the facts in this matter so fully because I am of the opinion that such facts are largely determinative of the questions involved on this motion.

The law is too well settled to require more than a restatement thereof, viz., that the owners of a business may sell it together with the good will thereof, which, as a general rule, includes the name under which the business is conducted and by which it is known, both to those with whom it deals, and the general public, and that the owners of such business, whether it be corporately or individually held and conducted, may bind themselves, by restrictive covenants, within reasonable limits as to time, and district or territory, not to engage in a similar business nor compete with the business so sold; and not to use the name of the business nor any trade name or term by which the business is known or identified. That such is the law, and that a contract of that character will be enforced according to its tenor, is not open to question.

The contract herein bound the Weckerle defendants according to its provisions, and they could have been forced to comply therewith; further, they having procured the Supreme Court to construe the contract, are bound by its terms, as so construed, and may now be required to conform thereto; they may no longer question its meaning or its application.

The contract, as construed, prohibits the use by the Weckerle defendants of the name " Weckerle " in a corporate name, " or in any manner so that same is used and designed to reach the attention of consumers or producers or prospective consumers or producers of milk and milk products, and in particular, but without limitation, on bill heads, any kind of advertising or other form of public announcement, letters and letter heads, vehicles, containers, tags and labels or employees' uniforms," to which are certain exceptions unimportant here, as they have no application under the facts of the case.

These Weckerle defendants, together with their brother and sisters, sold the Weckerle milk business and its good will, and their right to use the name Weckerle in connection with milk business in Erie county, receiving a substantial consideration therefor; and they may not take back or withhold any part of that which they sold. (*Weisberg* v. *Bliss*, 229 App. Div. 236; *Hackenheimer* v. *Kurtzman*, 235 N. Y. 57.)

As in the *Hackenheimer* case, as to the name Kurtzman, so in this case, the name " Weckerle " was valuable to the business bought and it was the duty of the Weckerles and each of them to refrain from using that name in the milk business in Erie county during the time fixed in the contract. (*Hackenheimer* v. *Kurtzman*, 198 App. Div. 681; affd., 235 N. Y. 57; *Herring-Hall-Marvin Safe Co.* v. *Hall's Safe Co.*, 208 U. S. 554.)

As to the corporate defendant herein, it being owned, officered, controlled and managed by the two Weckerle defendants, it must be charged with their knowledge and be responsible for the wrongs they commit in the furtherance of its business. (*Conviser* v. *Brownstone & Co.*, 209 App. Div. 584; *Ward Baking Co.* v. *Tolley*, 222 id. 653.)

The contention of defendants that plaintiff has no right to use the name " Weckerle " and the term " Gold Medal Milk " in connection with the milk business it bought from the Weckerles, and which it has continuously carried on since such purchase, is I believe without support in fact or law. That name and term had been used to build up the business that plaintiff bought; the name " Weckerle " was the framework upon which its good will was constructed. It would have been difficult, if not impossible, to have effectively transferred the good will of the business without transferring the name. The name Weckerle and the term Gold Medal Milk had become trade names and part of the good will of the business, and become for the purposes of that business the property of plaintiff. (*Ball* v. *Broadway Bazaar*, 194 N. Y. 429; *People ex rel. A. J. Johnson Co.* v. *Roberts*, 159 id. 70.)

Defendants' contention that plaintiff, because it has conducted the business it bought from the Weckerles, as its " Weckerle Branch " and not under the name of the new corporation, Wm. Weckerle & Sons, Inc., which it incorporated; and has continued to use in the business of its Weckerle Branch the name of " William Weckerle & Sons, Inc.," on the place of business it acquired from the Weckerles, and its vehicles, which it uses in such business, and in the telephone directory and in its advertising, is precluded from seeking relief in the courts, on the theory that it is·deceiving the public and also by that course is evading taxation upon that branch

of its business, is without substance. The public, or that part of it buying milk from plaintiff, may not know that such milk is not prepared for distribution and distributed by the Weckerles, although one of the five Weckerles has been at all times since plaintiff acquired the business and now is employed in the business; yet those so buying such milk have been in nowise harmed, nor suffered loss by reason thereof, any more than those were who bought " Kurtzman " pianos, after all the Kurtzmans had ceased to have any part in the manufacture or sale of Kurtzman pianos; as was the case in *Hackenheimer* v. *Kurtzman* (235 N. Y. 57, *supra*).

As to tax evasion, if plaintiff is subject to tax upon the property used and the business done in its Weckerle Branch, the governments, Federal, State and municipal, can be trusted to impose and collect such taxes; if plaintiff is not subject to tax thereon, then the fact of exemption therefrom does not outlaw plaintiff, nor leave plaintiff in position where the Weckerle defendants may, with impunity, break their contract with plaintiff, nor the defendants violate plaintiff's rights without restraint.

As to defendants' contention that the contract as construed by the judgment is void as tending to create a monopoly, and, therefore, may not be enforced against them, that claim would appear more sincere and fair if it were accompanied by a demand to rescind the contract, coupled with a *bona fide* offer to return the consideration therefor. While defendants' claim, if substantiated by the facts and law, may leave plaintiff where it may not be protected by the law and the courts from exploitation, still such claim comes with poor grace from those who have benefited so largely from the contract, whose restrictive provisions they are thus seeking to avoid.

From the history relating to milk production within this State, prior to the formation of the plaintiff in its present form, and the recital of the organization of plaintiff as a co-operative association of dairymen, to relieve the difficulties and needs of the milk producers; and the methods and scope of its operations since its incorporation, as given in the opinion in *Barns* v. *Dairymen's League Co-Operative Assn., Inc.* (220 App. Div. 624); and from the moving papers herein, it appears that plaintiff is an organization or combination of milk producers, and that the purpose of its formation and existence is to provide an outlet for and to market the milk and milk products of its members; and that such organization, or one with kindred purposes and methods, is essential not only to the continuance of milk production within the State, but to the good health of the residents of the larger centers of population of the State.

Defendants attack the force and effect of the *Barns Case (supra)*, contending that the recent decisions of the United States Supreme Court which they cite are to the contrary effect. I do not so read such decisions. In none of such cases was the court dealing with a combination formed and conducted for the purpose of marketing the products of its members, except in the case of *Liberty Warehouse Co.* v. *Tobacco Growers* (276 U. S. 71), and in that case the court held that a State law that exempted. a combination and methods that would otherwise be held to be a monopoly and in restraint of trade, but which, by reason of the ends it was found to serve, and of its co-operative character was exempted from the prohibition of its such State's anti-monopoly laws, was not violative of the Federal Constitution, because it was formed and operated for the purpose of marketing the product of its members. As I read it, that case is authority for holding that plaintiff is a valid, legal organization, and our State laws which exempt it from the operation of our State anti-monopoly laws do not contravene the Federal Constitution.

The *Barns Case (supra)* has also been cited with approval in the recent case of *N. Y. Clothing Mfrs. Ex., Inc.,* v. *Textile Fin. Assn., Inc.* (238 App. Div. 444, 452). Further, the State has again, as recently as 1934, in chapter 126 of the laws of that year, in article 21, entitled "Milk Control," of the Agriculture and Markets Law, in subdivision f of section 258-c of that law, reiterated the earlier laws under which plaintiff had been exempted from the application of the State's anti-monopoly laws, as follows: "A co-operative association of dairymen organized under or operated pursuant to the provisions of chapter seventy-seven of the Consolidated Laws and engaged in making collective sales or marketing for its members or shareholders of dairy products produced by its members or shareholders shall not be deemed or construed to be a conspiracy or combination in restraint of trade or an illegal monopoly nor shall the contracts, agreements, arrangements or combinations heretofore or hereafter made by such association, or the members, officers or directors thereof, in making such collective sales and marketing and prescribing the terms and conditions thereof, be deemed or construed to be conspiracies or to be injurious to public welfare, trade or commerce, if otherwise authorized by such chapter or law."

It in nowise appears other than from the allegations in the amended answer of defendants, that plaintiff has made or is attempting to make any combination to control or restrain the milk trade in the State of New York, nor the county of Erie, nor elsewhere. To permit the defendants to continue to violate the provisions of

their contract, while that issue is dragging its slow way through the courts would, if defendants are wrong in their contention in that respect, prove of great and irreparable injury to plaintiff, while to restrain defendants from violating the contract as asked by the plaintiff herein, can cause defendants but little damage, and is only requiring the Weckerle defendants to perform their contract as they and the court have construed it, while that issue is being determined.

Further, there seems to be no practical reason at this time for subjecting this plaintiff to the prohibitions and penalties of the State's anti-monopoly laws. Under the provisions of article 21 of the Agriculture and Markets Law, *supra*, the State has fully provided for the regulation and control of the milk business, including the fixing of minimum and maximum prices to the consumer, and the licensing, regulation and control of milk dealers. So that no monopoly nor combination is or will be able to exploit the milk producers or consumers. Should any attempt to do so be made the State already has or can readily, by declaring an emergency exists, provide the means to check it. (*People* v. *Nebbia*, 262 N. Y. 259; *Nebbia* v. *New York*, 291 U. S. 502.)

The Weckerle defendants sold the right to use their name in connection with the milk business in Erie county. They had the same right to sell such use of their name that they had to sell the milk business itself. They agreed not to interfere with such business by soliciting its customers nor by soliciting or advertising for milk business by use of the Weckerle name. Until it has been first determined that the contract is void or they are not bound thereby, they should be restrained from violating its terms.

The quotation from the English case, *Trego* v. *Hunt* (L. R. [1896] App. Cas. 7), set out in *Von Bremen* v. *MacMonnies* (200 N. Y. 41, at p. 50), sums up the law as it should, and I believe does, apply to the questions involved on this motion, as follows: " A man may not derogate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant, on the sale of good will, that the vendor does not solicit the custom which he has parted with: it would be a fraud on the contract to do so. These, as it seems to me, are only different terms and glimpses of a proposition which I take to be elementary. It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is not an honest thing to pocket the price and then to recapture the subject of the sale, to decoy it away or call it back before the purchaser has had time to attach it to himself and make it his very own."

The defendants should be and are restrained, during the pendency of the action, from using the name " Weckerle " in connection with the milk business in Erie county, including all kinds of advertising and including circulars to the milk trade; and also from serving or soliciting any customers of plaintiff whose names are set forth on the list furnished defendants by plaintiff.

The plaintiff's motion is granted as above outlined, with ten dollars motion costs; an order may be prepared to that effect which shall provide that plaintiff give an undertaking in the amount of $1,000 for the protection of defendants.