**HAZEL BISHOP, INC., Plaintiff-Appellee,**

v.

**PERFEMME, INC. and Hazel Bishop, Defendants-Appellants.**

**No. 235, Docket 27759.**

United States Court of Appeals
Second Circuit.

Argued Jan. 29, 1963.

Decided March 1, 1963.

Richard W. Blum, New York City (David J. Moscovitz, Blum, Moscovitz, Friedman & Blum, New York City, on the brief), for defendants-appellants.

Lawrence H. Reilly, Jr., New York City (Landis, Feldman, Reilly & Akers, New York City, on the brief; Herbert R. Sokolsky, New York City, of counsel), for plaintiff-appellee.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and DIMOCK, District Judge.

LUMBARD, Chief Judge. ·

This is an appeal from a judgment of the United States District Court for the Southern District of New York, Levet,

J., granting the plaintiff's request for an injunction and dismissing the counter-claim of one of the co-defendants. We affirm.

The plaintiff, Hazel Bishop, Inc., sells cosmetics under the federally registered trademark "Hazel Bishop," to publicize which it has expended more than $30,-000,000 since 1950. It entered into two contracts with Miss Hazel Bishop, a chemist in the field of cosmetics, who is a co-defendant in this action. By the terms of the first contract, retroactively dated November 1, 1950, the corporation hired Miss Bishop to act as a consultant for a period of two years. The compensation for her services as a consultant and certain other promotional duties, was $12,000 per year plus additional payments based on a percentage of sales, such payments not to exceed $20,000. Miss Bishop agreed not to perform any services for a competitor of the corporation except that she might act as a consultant for others without permitting the use of her name for the promotion of any product. In the Fifth Paragraph of the agreement, Miss Bishop acknowledged "that the Corporation shall have the perpetual right to the use of her name * * *." In the Sixth, she agreed that "during the term of this agreement and at all times after its termination, the Corporation shall have the right to use the name 'Hazel Bishop' and 'Bishop's' likeness in the merchandising of any and all cosmetic products now or hereafter merchandised by the Corporation * *." The Eighth Paragraph provided that after the termination of the agreement, the Corporation would "have the continued and unrestricted right to use the name 'Hazel Bishop' and Bishop's likeness on any or all of its products * * *." In the Twelfth Paragraph, Miss Bishop agreed to perform any acts necessary to empower the corporation to register "Hazel Bishop" as its trademark or trade name wherever it deemed registration appropriate. In Paragraph Fifteen, Miss Bishop agreed that, except in Arizona and New Mexico, she would not, for ·a period of twenty-five years, "use or au-

thorize the use of her name or likeness upon any product or the advertisements of any product offered for retail sale to the public."

In the second contract, dated February 19, 1954, Miss Bishop reaffirmed all the provisions of the 1950 contract. The corporation agreed that it would not "directly or indirectly, represent that Bishop personally is the originator and/or creator of any product of the Corporation other than its lipstick or that Bishop personally has endorsed any such product except such lipstick." Paragraph 4(C) stated:

> "Bishop covenants that she will not, directly or indirectly, detract from or capitalize upon in any manner, shape or form, upon the name or goodwill of The Corporation, except that she may use the name Hazel Bishop Laboratory, provided there is used in connection therewith the legend 'Not connected with Hazel Bishop Inc.' and provided Hazel Bishop Laboratory is confined to activities solely as a consultant only to the trade, and that any consultant report will carry a legend that 'This report may not be used for general circulation or reproduced in any manner for sales promotion, advertising, public, retail or wholesale distribution.' "

Miss Bishop received $310,000 from the corporation in consideration for her covenants and for the sale to the corporation of 200 shares of its stock which she had acquired earlier, apparently in return for services to the corporation.

In 1956, Miss Bishop, who had severed all connection with the corporation, organized Perfemme, Inc., a co-defendant, with herself as president and principal stockholder, for the purpose of marketing a solid perfume stick. As found by the district judge, Miss Bishop and Perfemme conducted a publicity campaign for their product which associated Miss Bishop with the product. On January 4, 1957, Women's Wear Daily, a trade journal, published an article referring to "Miss Perfemme," a mystery figure connected with the promotion of Perfemme's perfume stick, who was identified as Miss Bishop; the source of this information was Miss Bishop. About the same time, she gave an interview to Advertising Age, which later ran an article headed "Hazel Bishop Comes Back in Cosmetics as 'Miss Perfemme'." Newspapers in Hartford, New York City, and the midwest carried advertisements for the perfume stick under the name "Miss Perfemme," which advertisements contained a picture of Miss Bishop, partially masked. Miss Bishop granted further interviews and made personal appearances in a Hartford department store and on radio and television; although she identified herself as the mysterious "Miss Perfemme" and appeared in public in a mask, the total effect of these activities was to reveal herself behind the pseudonym and the mask as the true sponsor of the perfume stick. In addition, between 1956 and 1958, Perfemme used stationery which, under the letterhead "Perfemme Products Incorporated," carried the legend, "Miss Hazel Bishop, President" "now not connected with Hazel Bishop, Inc." In the fall of 1957, the plaintiff corporation began to market its own perfume stick.

The plaintiff's complaint alleged that these acts of Miss Bishop and/or Perfemme resulted in the public's association of the corporation's registered trademark "Hazel Bishop" with Perfemme's products, and that the acts "have caused and will cause confusion in the minds of the public as to the identities of said product and/or the source thereof, so that the public will not be able readily to distinguish the products of the plaintiff and the products of the defendants." The complaint alleged also that the acts of the defendants violated the terms of the corporation's contracts with Miss Bishop and constituted unfair competition. The plaintiff requested a declaration that the defendants

> " * * * have no right to use the name and/or likeness of the defendant Hazel Bishop in any manner or form by association, endorsement,

promotion, exploitation or otherwise in connection with the manufacture, sale and distribution of the aforesaid product of the defendant Perfemme Incorporated, or any other cosmetic product, or in any manner, shape or form, directly or indirectly, to engage in conduct which capitalizes upon the name or good will of plaintiff corporation. * * *"

and a decree enjoining them from committing such acts.

Miss Bishop counterclaimed that, after she had severed her connection with the plaintiff, it had advertised its products in such a way as to suggest that she had personally created or contributed to the development of the products, and that such advertising was in violation of the 1954 contract and was otherwise unlawful. (On appeal, the defendant presses only the contract aspect of the counterclaim.) She sought damages and an injunction.

The district judge found that the 1950 and 1954 contracts were valid, and, on the basis of the facts set out above, that Miss Bishop had broken them. He found that the plaintiff's advertisements either did not represent that Miss Bishop had personally created the products in question or referred to lipstick, which, under the provisions of the 1954 agreement quoted above, the plaintiff was permitted to represent as Miss Bishop's personal creation. The judgment of the district court enjoined the defendants from capitalizing on the goodwill attached to the

name or likeness of Miss Bishop "in connection with the promotion or sale in any manner of any cosmetic produced and/or merchandised by the Defendants."[1] The counterclaim was dismissed.

We are met at the outset with the defendants' suggestion, made for the first time on this appeal, that the district court lacked jurisdiction over this case. The complaint was originally filed in 1957 in the Supreme Court of New York State for New York County. It was removed to the district court by a petition for removal filed on June 4, 1957. Under 28 U.S.C. § 1441(b), a civil action brought in a state court may be removed to a federal district court "without regard to the citizenship or residence of the parties" if the action is one "of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States. * * *"

■ The plaintiff's complaint clearly alleges a cause of action for trademark infringement; language in the complaint, quoted above, is a near paraphrase of portions of 15 U.S.C. § 1114, which creates a civil remedy for infringement of a federally registered trademark. That being so, any substantial, related claim of unfair competition was within the original jurisdiction of the district court under 28 U.S.C. § 1338(b), which confers on district courts "original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim un-

---

1. The judgment ordered and decreed:
"(5) That the Defendants are hereby enjoined jointly and severally (a) from presently or hereafter using the name or likeness of Hazel Bishop, in connection with the promotion or sale, in any manner of the Defendant's perfume stick, and (b) from further use of the name or likeness of Hazel Bishop in connection with the promotion or sale in any manner of any cosmetic produced and/or merchandised by the Defendants.
"(6) The Defendants are enjoined jointly and severally from using the legend 'not connected with Hazel Bishop, Inc.,' or 'not now connected with Hazel Bishop, Inc.,' in connection with the promotion or

sale in any manner of any cosmetic produced and/or merchandised by the Defendants.
"(7) The Defendant Hazel Bishop is restricted to using the legend 'not connected with Hazel Bishop, Inc.' as was specified in the agreement of February 19, 1954, to wit: only in connection with the Hazel Bishop Laboratory when the latter's activities are confined solely to being a consultant to the trade and providing that any report issued from said laboratory carries the legend 'this report may not be used for general circulation or reproduced in any manner for sales, promotion, advertising, public, retail or wholesale distribution'."

der the * * * trademark laws." Under the doctrine of pendent jurisdiction, the district court's jurisdiction extended also to the claim that Miss Bishop had broken her contract by attempting to capitalize on the goodwill attached to her name.

Early decisions narrowly confining the scope of pendent jurisdiction, e. g., Kleinman v. Betty Dain Creations, Inc., 189 F. 2d 546 (2 Cir., 1951), have been superseded by a broader conception of judicial economics. This development is reviewed in Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2 Cir., 1956), where we said that this circuit is "now committed to a broader view of pendent jurisdiction, at least in those cases involving a substantial federal question under the patent, copyright or trade-mark laws within 28 U.S.C.A. § 1338(b)." Id. at 544. See also Telechron, Inc. v. Parissi, 197 F.2d 757, 761 (2 Cir., 1952), saying that the Kleinman case had been "in substance overruled" by Schreyer v. Casco Products Corp., 190 F. 2d 921 (2 Cir., 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952). And see Pursche v. Atlas Scraper & Engineering Co., 300 F.2d 467, 482–484 (9 Cir., 1961), cert. denied, 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170 (1962); O'Brien v. Westinghouse Electric Corp., 293 F.2d 1, 11–14 (3 Cir., 1961).

Although proof of the plaintiff's contract claim involved elements not essential to a claim of trademark infringement or unfair competition, "virtual identity of proof" is not required, where such a requirement would frustrate the purpose of § 1338(b) "to avoid 'piecemeal' litigation to enforce common-law and statutory copyright, patent, and trade-mark rights * * *", Reviser's Note to 28 U.S.C.A. § 1338(b). Maternally Yours, supra, 234 F.2d at 543–544. The claim that Miss Bishop broke her contract by exploiting the plaintiff's good will in the mark "Hazel Bishop" so closely parallels the claims of trademark infringement and unfair competition, also based on Miss Bishop's and Perfemme's exploitation of the mark, that it would frustrate the purposes of § 1338(b) and the doctrine of pendent jurisdiction were separate trials in the federal and state courts to be required. Indeed, we have held a comparable contract claim relating to a patent to be itself a claim of unfair competition within the meaning of § 1338(b). Telechron, supra. Cf. Pursche, supra, 300 F. 2d at 483, n. 19. Whether we rest the district court's jurisdiction directly on § 1338(b), as in Telechron, supra, or on § 1338(b) via the doctrine of pendent jurisdiction, the reasons for upholding such jurisdiction are the same. Since, as noted above, the claim of trademark infringement was a substantial one, American Auto Ass'n v. Spiegel, 205 F.2d 771 (2 Cir.), cert. denied, 346 U.S. 887, 74 S.Ct. 138, 98 L.Ed. 391 (1953), is not in point.

The plaintiff apparently abandoned its claims of trademark infringement and unfair competition during the progress of this lawsuit, probably because Perfemme ceased to make sales sometime in 1957 and it has ceased to do business, leaving the rights which the plaintiff wants primarily to protect encompassed by the contract claim against Miss Bishop.[2] This does not, however, affect the district court's jurisdiction on removal once acquired. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938); Siler v. Louisville & Nashville R. R., 213 U.S. 175, 191–192, 29 S. Ct. 451, 53 L.Ed. 753 (1909). In Brown v. Eastern States Corp., 181 F.2d 26 (4 Cir.), cert. denied, 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950), removal jurisdiction was upheld although the plaintiff had, after removal, amended his complaint to delete all allegations raising federal questions; the court said that the rule was clear that a case was "not to be remanded if it was properly removable upon the record as it stood at the time that the petition for removal was filed."

---

2. The injunction of the district court is, however, directed at both defendants, and both defendants have appealed.

Id. at 28–29 (dictum). We think that this correctly states the rule which is applicable here.

■ On the merits, we find adequate ground for the district court's judgment in Paragraph 4(C) of the 1954 contract, quoted above. Particularly in view of the provisions of the 1950 contract, reaffirmed in 1954, that paragraph manifests a clear understanding between the parties that the value of the name "Hazel Bishop" should accrue to the plaintiff and that Miss Bishop would not attempt in any way to reap that value for herself. The words of the paragraph are explicit and comprehensive. Moreover, the carefully circumscribed exception, which permitted Miss Bishop to use her name in connection with a laboratory, would have been pointless unless it were regarded as an exception carved out from the otherwise exclusive right of the plaintiff to the commercial use of the name.

■■ The law of New York, which governs this contract, Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954),[3] upholds agreements whereby one party agrees to refrain from the commercial exploitation of his name and vests the exclusive right to the goodwill attached to his name in another. Dairymen's League Co-operative Ass'n, Inc. v. Weckerle, 160 Misc. 866, 291 N.Y.S. 704 (N.Y.Sup.Ct.1936); Wheeler Syndicate, Inc. v. Wheeler, 99 Misc. 289, 163 N.Y.S.

817 (N.Y.Sup.Ct.1917); cf. Delancey Kosher Restaurant & Caterers Corp. v. Gluckstern, 305 N.Y. 250, 112 N.E.2d 276 (1953). This is in accord with the general rule. See Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247 (1891); Goldwyn Pictures Corp. v. Goldwyn, 296 F. 391 (2 Cir., 1924); Guth v. Guth Chocolate Co., 224 F. 932 (4 Cir.), cert. denied, 239 U.S. 640, 36 S.Ct. 161, 60 L.Ed. 481 (1915); 1 Nims, Unfair Competition and Trade Marks 111–13 (4th ed. 1947).

The defendant has argued before us that the contracts to be enforced here prevent Miss Bishop from competing with the plaintiff and are invalid because they constitute an unreasonable restraint of trade. There may be some suggestion in the opinion of the district court, particularly conclusion of law number 5(2),[4] that Miss Bishop's right to compete was involved. But whatever may be the correct construction of the relevant provisions of the two contracts, the right to compete without the prohibited use of the name "Hazel Bishop" was not put in issue by the complaint and is not in question on this appeal. The judgment appealed from does no more than enjoin Miss Bishop from commercially exploiting her name in a manner prohibited by the two contracts.

We find no reason to disturb the district court's dismissal of the counterclaim.

Affirmed.

3. The plaintiff is a New York corporation with its place of business in New York; Miss Bishop is a resident of New York. The 1954 contract was signed in New York; the 1950 contract does not indicate where it was signed, but it was presumably signed in New York as well. There is no indication that any state other than New York had any "significant contacts" with the contract or that the parties thought that any but New York law would be applied.

4. The district judge found that Miss Bishop had violated the contracts in that she "has worked and rendered services directly and indirectly for defendant Perfemme in connection with a product which would compete with products which the plaintiff actually marketed." This

was apparently regarded as a violation of the First Paragraph of the 1950 agreement, which states:

"The Corporation hereby engages Bishop for a period of two (2) years from November 1, 1950 to act as a consultant and Bishop agrees to act as a consultant for said period and further agrees that she will not work or render services directly or indirectly for any person, firm or corporation in connection with any product which shall compete with products which the Corporation actually markets. The Corporation agrees, however, that Bishop may act as consultant for others provided that her name is not used in any shape, manner or form for the exploitation, promotion or sale of any product."