**CLAIROL INCORPORATED, Plaintiff,**

v.

**The GILLETTE COMPANY, Defendant.**

**No. 66 Civ. 969.**

United States District Court
E. D. New York.

June 23, 1967.

Weil & Lee, New York City, for plaintiff; Alfred T. Lee, New York City, of counsel.

Rogers, Hoge & Hills, New York City, for defendant; William F. Weigel, Marie V. Driscoll, New York City, David P. List, Thomas H. Morsch, Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., of counsel.

## OPINION AND ORDER

WEINSTEIN, District Judge.

In this action for trademark infringement and unfair competition, plaintiff seeks a preliminary injunction restraining defendant from using the term "Innocent" on any hair dye product. Defendant acknowledges that it is presently test-marketing and is about to place on the national market a product entitled "Toni Shampoo—Easy Hair Coloring for Innocent Color," but denies that plaintiff has acquired trademark rights in the word Innocent.

■ Award of a preliminary injunction is inappropriate. Plaintiff has made neither a "clear showing of probable success" nor of "irreparable injury"—standards which it must meet at this stage of the litigation. Societe Comptoir De l'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc., 299 F.2d 33, 35, 1 A.L.R.3d 752 (2d Cir. 1962) (lack of probable ultimate success). See also Santos v. Bonanno, 369 F.2d 369 (2d Cir. 1965); Imperial Chemical Industries Limited v. National Distillers and Chemical Corporation, 354 F.2d 459 (2d Cir. 1965) (lack of showing of irreparable injury). Defendant has demonstrated that it will suffer substantial damages if enjoined. On the basis of the information now before us, "the likelihood that the plaintiff's mark is valid, is worthy of protection, and is being infringed by the defendant" (W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871 (2d Cir. 1966)) is not sufficiently high to warrant circumscribing defendant's freedom of action at this time.

The basic contention on which plaintiff's case rests is that it acquired the

exclusive right to the word Innocent as a trademark for hair dyes by having extensively used that term in the form Innocent Beige and Innocent Ivory. In its brief plaintiff states that it is relying solely "upon the common law rights it has acquired by virtue of its extensive and unquestionable prior use of those marks" and concedes, despite contrary allegations in its complaint, that it has no rights by virtue of the registration of Innocent Beige on the Supplemental Register of the Patent Office.

Neither party has considered the effects of plaintiff's disclaimer on the jurisdiction of this Court. Since this is not a diversity case—both plaintiff and defendant are Delaware corporations—federal jurisdiction must rest on section 1114 of title 15 of the United States Code which gives district courts jurisdiction over actions for infringement of a federally registered trademark and subdivision (b) of section 1338 of title 28 of the United States Code which confers on district courts "original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the * * * trademark laws." In the absence of a motion to dismiss, this Court will assume for the purposes of this motion that the allegations in the complaint specifying federal registration of Innocent Beige were sufficient to vest this Court with jurisdiction despite plaintiff's later repudiation of reliance on this registration. See Hazel Bishop, Inc., v. Perfemme, Inc., 314 F.2d 399, 402–403, 5 A.L.R.3d 1031 (2d Cir. 1963). Because of the importance of this question, however, particularly in light of the Supreme Court's recent language in United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the parties are directed to present briefs on this issue the next time either makes a motion or at the Pre-trial Conference in this case, whichever is sooner.

## TRADEMARK RIGHTS ARISING FROM USE OF INNOCENT IVORY AND INNOCENT BEIGE.

The moving papers show that Innocent Ivory was selected by plaintiff in early 1964 to designate one of at least ten shades in its new Born Blonde line of haircolors, and that Innocent Beige was chosen at the same time or shortly before as the denomination for one of at least ten shades of plaintiff's line of Picture Perfect Instant Color Rinses. Plaintiff sought to register both terms as federal trademarks, but withdrew its application for Innocent Ivory when it was opposed by the Proctor and Gamble Company. Because of our finding below that plaintiff has not yet made a sufficient showing of trademark usage to warrant injunctive relief, we need not decide whether plaintiff forfeited its rights to a trademark in Innocent Ivory by entering into an agreement with Proctor and Gamble which provided that:

> "Clairol will limit its use of Innocent Ivory to a shade or color identification for hair tinting, dyeing and coloring preparations, using the same size and style of type for the words "Innocent" and "Ivory" with Innocent Ivory always being less prominent than the product trademark."

Innocent Beige was denied registration on the Principal Register, but was granted registration on the Supplemental Register in May, 1965.

Innocent Ivory has been the most popular color in the Born Blonde line since national distribution started in October, 1964 with over two and one-half million "units" being sold by the time this suit was instituted in October of 1966. National distribution to the beauty salon trade of the Picture Perfect product designated as Innocent Beige began in August, 1965 followed by full retail distribution in July-August, 1966. Plaintiff claims to have sold over 650,000 "units" of this color.

The term Innocent Ivory appears solely on packages of Born Blonde lotion

toner which contain the notation "extra light blonde–356." On these cartons, the words "Clairol," "Born Blonde" and "Lotion Toner" are printed in considerably larger and more distinctive letters. See Exhibit A, item 1.

EXHIBIT A

The Innocent Beige color in the Clairol Picture Perfect Instant Color Rinse line is similarly packaged.

## PROSPECTIVE ADDITIONAL USE OF INNOCENT BY PLAINTIFF.

Plaintiff claims that it has made extensive plans for greatly expanded use of the word Innocent in a new line of hair dye products. According to its papers, a tentative commitment had been made at least as early as August 3, 1966 to use the phrase Innocent Blonde for a new line of products which it had been developing since late 1965. Plaintiff contends that it did not discover until August 23, 1966 that defendant was about to test-market its new hair dye bearing the words Innocent Color. Formal intra-corporate approval of the Innocent Blonde name was given by plaintiff's president in October, 1966. By the time this motion was argued, however, Innocent Blonde had not reached the market, although plaintiff claimed that marketing would begin within sixty days.

## USE OF INNOCENT BY DE-FENDANT.

Defendant claims to have adopted the term Innocent Color in November, 1965, and to have been selling this product in the test-market cities of Dallas, Fort Worth, Kansas City, and St. Louis since September, 1966. Defendant concedes that the trademark search it conducted prior to adopting Innocent Color divulged plaintiff's registration of Innocent Beige and pending registration of Innocent Ivory. Defendant argues, however, that it was advised by counsel that plaintiff's names were merely shade designations that could not preclude defendant from using the word Innocent. Defendant further claims not to have used Innocent as a trademark but solely as a descriptive phrase.

Although plaintiff claims not to have heard of defendant's new product until after it had decided to proceed with a new line to be known as Innocent Blonde, defendant suggests that plaintiff's adoption of Innocent Blonde—referred to by defendant's counsel as a "fighting brand" or "spoiler"—was prompted by learning of defendant's imminent introduction of Innocent Color.

## FAILURE TO CLEARLY DEMON-STRATE OWNERSHIP OF TRADEMARK.

■ Even when no effect is given to plaintiff's attempts to register Innocent Ivory and Innocent Beige as federal trademarks, it is clear that plaintiff used these terms in marketing its products prior to the latter part of 1965 which is the earliest date defendant claims to have started using the phrase Innocent Color. There also seems little doubt that the word Innocent is capable of trademark protection where, as here, it is used fancifully and suggestively as a euphemism for guile in making hair appear what it is not, the very antithesis of innocence. See, e. g., Douglas Laboratories Corp. v. Copper Tan Inc., 210 F.2d 453 (2d Cir. 1954).

■ But priority of usage and suitability as a trademark are not the only criteria a word must meet if it is to warrant protection. Association of the word and the manufacturer's name in the public mind is essential. The "function of a trademark is to identify the *source* of the product." 3 Callman, Unfair Competition and Trade-Marks, p. 1057 (1965 Cum.Supp.) (emphasis in original). Section 1127 of title 15 of the United States Code provides:

"[t]he term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

This statutory language essentially embodies the concept and definition of common law trademarks. See, e. g., Ex parte Pulitzer Publishing Co., 82 U.S.P.Q. 229 (Comm'r Patents 1949).

■■ A mark which is used to designate a particular style, grade, or, as in this instance, color is capable under some conditions of becoming with use a valid trademark—but only if it primarily

serves to indicate origin and only secondarily to designate the particular kind of goods. Nims, Law of Unfair Competition and Trade-Marks, p. 529 (4th Ed. 1947). The question of whether the mark indicates source must be decided "on the basis of the particular facts of each case." Kiekhaefer Corporation v. Willys-Overland Motors, 236 F.2d 423, 426, 43 CCPA 1013 (1956) ("Hurricane" valid trademark for a particular type of outboard motor even though it also served as a "grade-mark;" court found "it served as an additional means of indicating origin").

■ Turning to the case at hand, we cannot say at this time and on the present incomplete record that plaintiff has made a clear showing of having acquired trademark rights in Innocent Ivory and Innocent Beige. These terms may be capable of distinguishing plaintiff's products but there is nothing in the papers before us to indicate that they in fact do as far as the general consuming public is concerned. Cf. Ex parte Clairol Inc., 105 U.S.P.Q. 71 (Comm'r Patents 1955) (in holding that Ermine, one of the plaintiff's shade designations for a hair coloring product was entitled to registration on the Supplemental Register, the Commissioner found that although the mark as used did not in fact distinguish applicant's products it was capable of distinguishing them, and that this capability is all that is required for Supplemental Registration).

Presented as indicating public association of Innocent and Clairol are affidavits from several persons in the trade. That these statements must be viewed skeptically at this stage of the proceeding and should be tested by cross-examination at trial is demonstrated by the following excerpt from the deposition of one of plaintiff's affiants:

Q  Are you familiar with the other shades in the "Picture Perfect" line?

A  Most of them; some of them.

Q  Can you name a few of them for us?

A  Well, "White-White" is one, very popular. I have a listing that we keep on the back. There are so many names. I just can't right at this moment—right now I have a mental block on "Picture Perfect." Can you believe it? I just took orders for it. I have a mental block. I can't think of the names. This is why the manufacturers give us listings.

Q  You mean Clairol has so many color designations?

A  All the color manufacturers, all of them. I go nuts thinking of them.

Q  Do you know which color designations are from which manufacturer?

A  By the name?

Q  You don't have to consult your sheets for that?

A  Many times you do.  *  *  *

Although there are several advertisements attached as exhibits to plaintiff's moving papers indicating that Innocent Ivory may have been the featured color in promotions of Born Blonde, there is nothing indicating where or how often, or how much money was expended on such campaigns. Nor has plaintiff submitted any evidence showing whether the public associates these terms with the plaintiff. Cf. Standard Oil Company v. Standard Oil Company, 252 F.2d 65, 75, 76 A.L.R.2d 600 (10th Cir.1958); Anheuser-Busch, Inc. v. Bavarian Brewing Company, 264 F.2d 88, 91 (6th Cir. 1959); La Maur, Inc. v. Revlon, Inc., 245 F.Supp. 839, 842–843 (D.Minn.1965); Household Finance Corp. v. Federal Finance Corp., 105 F.Supp. 164 (D.Ariz. 1952). See also, e. g., Zeisel, The Uniqueness of Survey Evidence, 45 Corn.L.Q. 332 (1960); McCoid, The Admissibility of Sample Data, 4 U.C.L.A.L.Rev. 233 (1957).

Exhibit C–4 to plaintiff's moving papers, which consists of a twelve-page colored booklet advertising plaintiff's Picture Perfect Instant Color Rinse, contains a chart listing over fifty words plaintiff uses to designate the various shades available in its Creme Toner, Born Blonde, Miss Clairol and Picture Perfect lines. Included are such colors as Sandy Blonde, Strawberry Blonde, Rose Beige,

Flaxen Blonde, and Golden Apricot, followed by the statement "All of the above are trademarks of Clairol Inc." There is nothing in plaintiff's moving papers, however, to indicate that the public attaches any different or greater significance to Innocent Beige or Innocent Ivory than it does to these other terms—which seem so nondistinctive as hardly to lead this Court to conclude that they would necessarily indicate source to the public. A search by defendant's counsel revealed seventy-four different color designations which plaintiff has registered or attempted to register as trademarks with the United States Patent Office and plaintiff claims at least thirty other unregistered marks—including Innocent Ivory—as common law trademarks. In light of this multiplicity of terms used by plaintiff to designate its shades, a serious issue of fact is posed as to whether trademark significance attaches to such designations.

Infinite shadings of color make it possible to attach a fanciful name designation to each, thus pre-empting a large portion of words suitable for attracting women's attention. Cf. Scandia Cosmetics Corporation v. Elizabeth Arden Sales Corporation, 140 U.S.P.Q. 437, 438 (T.T.A.B.1963) (" 'Secret' is not entirely arbitrary when used as a component of a trademark for cosmetics * * * it is obviously suggestive of certain qualities and conditions of cosmetic preparations in general. * * * Considering therefore the nature of the term 'Secret' and the lack of any similarity whatsoever between the terminal portions of 'Secret Touch' and 'Secret Cover,' it is our opinion that the contemporaneous use of these marks is not reasonably calculated to cause confusion or mistake or to deceive"). The use of a word as a shade designation should be a major component of labeling and marketing if it is to warrant protection. Such a requirement provides some practical limits to trademark engrossment since manufacturers cannot put everything in bold type without diluting the strength of the primary words they want the public to associate with their product.

Doubt about the possibility of acquiring trademark rights in numerous shade names was expressed by the Court in Tayton Company v. Revlon Products Corporation, 65 U.S.P.Q. 406 (S.D.N.Y. 1945). There plaintiff sued for trademark infringement on the ground that defendant was using "Dynamite" for beauty products in violation of plaintiff's alleged trademark "Pink Dynamite." Plaintiff had originally used the term to designate a shade but was now claiming it as a trademark. In denying plaintiff's motion for a preliminary injunction, the Court stated:

> "Merely because the cosmetic trade makes a practice of multiplying its terms to identify its numerous products is scant reason for holding each of those terms a trade mark which is a mark of origin. Apparently they serve some purpose since the practice seems to be universally followed but a * * * Judge would wonder if the buying public really identified the manufacturer from the terms he used for his wares or was even curious about his identity. It might well be argued that many trade mark terms are used in the cosmetic industry with no thought whatever to identify the maker but only to convey veiled and equivocal promises and that in that sense the appearance of distinction in them is specious. * * * The great number of phrases and words used by cosmetic manufacturers as marks to distinguish their numerous products may indicate their understanding that the marks are employed to insinuate the inherence of some characteristic virtue or quality in the article and therefore are not fanciful. Any reference implied to the maker would be incidental. A trial is required to develop this issue." (Id. at 406–407).

## FAILURE TO DEMONSTRATE INFRINGEMENT BY DEFENDANT.

In order to succeed in its claims of unfair competition and trademark in-

fringement, plaintiff must at the very least show that defendant's use of INNOCENT COLOR in connection with its product is likely to create confusion "in the mind of the ordinary purchaser, exercising due care in the market place." Standard Oil Company v. Standard Oil Company, 252 F.2d 65, 74, 76 A.L.R.2d 600 (10th Cir. 1958). See also La Maur, Inc. v. Revlon, Inc., 245 F.Supp. 839 (D. Minn.1965). As regards Innocent Beige or Innocent Ivory versus Innocent Color, the ordinary consumer will not have to choose between two products in which Innocent is presented with similar emphasis and design. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 760 (2d Cir. 1960) ("the District Court should have considered the names of the two products [Brylcreem and Valcream] in conjunction with the similarity of the presentation of the products with respect to their design and general appearance, containers, tubes, price, size, perfume, and other non-functional aspects"). She will be confronted with a choice between Clairol's Born Blonde Lotion Toner—or Clairol's Picture Perfect Instant Color Rinse —and Toni Shampoo-Easy Hair Coloring for Innocent Color. Innocent is such a minor component in the labels plaintiff is now using that on this record it cannot be said that confusion is likely. In its brief, plaintiff concedes that it could not complain if defendant used Innocent in an unemphasized descriptive way on its package.

▮ Proof of actual confusion is ordinarily not essential on a motion for a temporary injunction because the haste with which the injunction is ordinarily sought makes obtaining such proof virtually impossible. 3 Callman, Unfair Competition and Trade-Marks, pp. 1372–74 (2d Ed. 1950). In this case, plaintiff waited eight months after institution of suit before seeking an injunction. Throughout this period plaintiff's products have been sold side by side with defendant's product in four large cities. Despite this history plaintiff has not introduced evidence of confusion in the market place. "There can be no more positive proof of likelihood of confusion than evidence of actual confusion." Standard Oil Company v. Standard Oil Company, 252 F.2d 65, 74, 76 A.L.R.2d 600 (10th Cir. 1958). See also Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 759–760 (2d Cir. 1960) (example of confusion); Waldes, Kohinoor, Inc. v. Illinois Tool Works, 287 F.2d 197 (C.C.P.A.1961) (example of lack of confusion). Cf. Gillette Company v. Ed Pinaud, Inc., 178 F.Supp. 618, 622 (S.D.N.Y.1959) ("lack of urgency is further indicated by plaintiff's delay of over six months between the commencement of the action and the making of the present motion. During this period plaintiff could have been far advanced toward final adjudication of the issues").

As regards the proposed new lines, Innocent Blonde and Innocent Color (see Exhibit A, items 2 and 3), it is not relevant on this motion that their coexistence may cause confusion. Since plaintiff has not made a showing of any trademark right to Innocent Beige and Innocent Ivory on this motion, and since Innocent Color might on a trial of the issues be found to have a priority over Innocent Blonde in the absence of such right, the blame for any possible confusion cannot, at present, be allotted and cannot serve as a basis for enjoining defendant.

## FAILURE TO DEMONSTRATE CLEAN HANDS

▮ A preliminary injunction is an equitable remedy which need not be granted where the parties lack clean hands. 4 Callman, Unfair Competition and Trade-Marks, p. 1745 (2d Ed. 1950). On this score, serious issues of fact and credibility have been raised in the affidavits and stressed in the briefs. Defendant accuses plaintiff of having procured the registration of Innocent Beige "by false and fraudulent statements to the Patent Office," of having chosen Innocent Blonde solely as a "'fighting brand' intended to keep defendant's product from the market," and of using its dominant position in the hair color-

ing market to restrain competition unlawfully.

Plaintiff has sought to neutralize the first accusation by contending that it is relying solely on its common law rights and not on any right stemming from registration. Nevertheless, plaintiff's good faith in seeking registration remains an issue in light of plaintiff's contention that:

"The trademark sales of 'Innocent Ivory' and 'Innocent Beige' are, as stated insignificant on this motion except as those sales and plaintiff's efforts to register the said terms evidence its consistent purpose to have them serve as trademarks."

■ Plaintiff hotly disputes defendant's allegations that plaintiff appropriated defendant's idea and developed a "fighting brand" solely to keep defendant out of the market. Until discovery is complete and a firmer chronology emerges it is impossible to evaluate these charges. Even on the record already assembled there is more than a suspicion that both parties were privy to each other's innermost corporate thoughts. Unethical prying into the secrets of a competitor —if it exists—may be considered in determining whether final equitable relief will be granted. The "law makes some rudimentary requirements of good faith." E. I. DuPont De Nemours Powder Co. v. Masland, 244 U.S. 100, 102, 37 S.Ct. 575, 576, 61 L.Ed. 1016 (1917) (Holmes, J.). Cf. Perryton Wholesale, Inc. v. Pioneer Distributing Co. of Kan., 353 F.2d 618 (10th Cir. 1965), cert. denied, 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966); United States v. Bottone, 365 F.2d 389 (2d Cir.), cert. denied, 385 U.S. 974, 87 S.Ct. 514, 17 L.Ed.2d 437 (1966); Colgate-Palmolive Company v. Carter Products, 230 F.2d 855 (4th Cir.), cert. denied, 352 U.S. 843, 77 S.Ct. 43, 1 L.Ed. 2d 59 (1956). Business Espionage, Fortune, May 1946, p. 118.

■ The legal effect to be given a defense based on illegal restraint of trade is not clear in unfair competition cases. See, Note, The Besmirched Plaintiff and the Confused Public: Unclean Hands in Trademark Infringement, 65 Colum.L. Rev. 109 (1965) (conflicting public interest in competition and lack of confusion). Compare Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87, 95–96 (9th Cir. 1963), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964) (plaintiff not barred from relief by claimed violations of anti-trust laws) with Phi Delta Theta Fraternity v. J. A. Buchroeder & Company, 251 F.Supp. 968 (W.D. Mo.1966) (violation of anti-trust laws is an affirmative defense to suits for trademark infringement). Absent a motion to strike this defense, defendant should have the opportunity to develop the facts underlying its allegations of illegality.

■ The plaintiff controls more than sixty percent of the national market for hair dyes with current sales of approximately $100 million a year. Its claims should be most carefully scrutinized to insure that trademarks and the threat of litigation are not used to block entry into the field of competitors who must commit substantial capital if they are to compete in the expensive national market. Cf. F. T. C. v. Proctor and Gamble Company, 386 U.S. 568, 574–78, 87 S.Ct. 1224, 18 L.Ed. 2d 303 (1967) (use of extra advertising power to exclude competition).

Somewhat analogous to defendant's accusations is plaintiff's contention that plaintiff's use of Innocent is to be protected even if Innocent Beige and Innocent Ivory are not valid trademarks because defendant's behavior falls within the New York State substantive law of the "misappropriation doctrine" discussed in Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 782 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). Cf. Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962) (whether federal or state law should be applied). To come within that case plaintiff would at the very least have to establish that defendant deliberately sought to exploit purchasers' familiarity with Innocent Beige and Innocent Ivory in adopting

Innocent Color. The bona fides of defendant are the subject of substantial dispute which cannot be resolved on the papers before us.

## FAILURE TO DEMONSTRATE IRREPARABLE HARM TO PLAINTIFF.

A court may deny a motion for a preliminary injunction when no clear showing has been made that plaintiff will be irreparably harmed if defendant's product is permitted to remain on the market.

Plaintiff alleges, though without supporting evidentiary facts, that it has expended $175,000 in developing its projected Innocent Blonde line, an unimpressive sum viewed in context of defendant's multi-million dollar pending promotion of Innocent Color, and certainly well within defendant's financial ability to repay. See, e. g., Gillette Company v. Ed Pinaud, Inc., 178 F.Supp. 618, 623 (S.D.N.Y.1959) (preliminary injunction denied "in the light of the variety of issues which require determination, and plaintiff's failure to show that defendant is unable or unlikely to be able to respond in damages for any damage plaintiff may have suffered"); Puritan Sportswear Corp. v. Puritan Fashions Corp., 232 F.Supp. 550, 554 (S.D.N.Y. 1964).

Plaintiff also claims that it will be damaged because "confusion will unquestionably occur if defendant proceeds as threatened." As noted above, plaintiff has submitted no evidence of actual confusion although Innocent Beige, Innocent Ivory and Innocent Color have been sold side by side in four test markets. "Mere assertions of irreparable damage, absent prima facie supporting evidentiary facts, are insufficient to sustain the applicant's burden of proof." Hudson Pulp & Paper Corp. v. Swannee Paper Corp., 223 F. Supp. 617, 618 (S.D.N.Y.1963) ("Absence of evidentiary facts is especially significant when, as in the instant case, the requested injunction would prevent competition from the party sought to be enjoined").

## FAILURE TO DEMONSTRATE THAT HARM TO PLAINTIFF OUTWEIGHS HARM TO DEFENDANT.

On the papers submitted and the testimony adduced on this motion, it might be found that defendant is further along in its preparation to exploit the market for a line of Innocent hair dyes than is the plaintiff. It has apparently invested more and its sales of hair dyes would be more adversely affected by the injunction than would the plaintiff's by denial.

The testimony of John R. Carr, Group Brand Supervisor for defendant, taken on the hearing of this motion, indicates that defendant has undertaken extensive commitments for packaging, printing and advertising in connection with Innocent Color. The affidavit of the president of the Toni Division of defendant alleges that these commitments and actual expenses amount to $3,150,000 exclusive of the actual out-of-pocket expenses amounting to $545,000 incurred by defendant in test-marketing and expenditures of $170,000 for product development.

Defendant's Group Brand Supervisor also testified that a temporary injunction would totally disrupt defendant's campaign for Innocent Color even if defendant were ultimately successful at trial. His uncontroverted testimony indicated that new hair coloring products must reach the market prior to the fall of the year because the display racks for such products are thereafter pre-empted by Christmas items.

In determining whether to grant a preliminary injunction it is proper for a court to "weigh the equities" (Willpat Productions, Inc. v. Sigma III Corporation, 277 F.Supp. 354, 356 (S.D.N.Y. 1964)) and "balance the hardships."

See, e. g., Universal Major Electric Appliances, Inc. v. Universal Major Corporations, 138 F.Supp. 745, 746 (S.D.N.Y. 1956). In applying these tests it appears that the harm to defendant will outweigh that to plaintiff if any injunction is granted at this time and that, consequently, a temporary injunction should not issue. Joshua Meier Company, Inc. v. Albany Novelty Manufacturing Co., 236 F.2d 144, 148 (2d Cir. 1956); Willpat Productions, Inc. v. Sigma III Corporation, supra, 277 F.Supp. at pages 356–57; Blaich v. National Football League, 212 F.Supp. 319, 322–24 (S.D.N.Y.1962). In a market such as this, so heavily dependent upon highly competitive and alert advertising specialists, many ideas and names are afloat at any one time. The court should not discourage the enterpreneur who moves first to commit his resources in favor of a particular idea or word. Defendant's multimillion dollar advertising budget for its Innocent Color line suggests that it intends to rely on its own, not plaintiff's, merchandising efforts.

## CONCLUSION.

We need not and cannot here decide the facts at this stage of the litigation when discovery has not been completed by either side. On the basis of affidavits, exhibits, testimony taken on the hearing of the motion, and the briefs, it is possible only to hypothesize a statement of facts which has some substantial basis. This construct for the purposes of this motion is based upon an evaluation of the available information in a manner most favorable to the defendant because its freedom of action is sought to be limited before it has had a full opportunity to defend itself. The parties are free to try the issues at the hearing on the permanent injunction. Imperial Chem. Indus. Ltd. v. National Distillers & Chem. Corp., 354 F.2d 459, 463 (2d Cir. 1965).

For all and each of the foregoing reasons, the motion for a preliminary injunction is denied.

So ordered.