**Paul R. GETTLEMAN, Plaintiff,**

**v.**

**Stewart WERNER, Acting Commissioner of the Bureau of Corrections for the Commonwealth of Pennsylvania, et al., Defendants.**

**Civ. A. No. 73-567.**

United States District Court,
W. D. Pennsylvania.

July 17, 1973.

Leonard I. Sharon, Pittsburgh, Pa., for plaintiff.

John M. Duff, Deputy Atty. Gen., Geoffrey Paul Wozney, Asst. Atty. Gen., Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

MARSH, Chief Judge.

The plaintiff, Paul R. Gettleman, a 28-year-old law school graduate, has been employed at the State Correctional Institution at Pittsburgh (Penitentiary) in the capacity of school teacher and notary public. At the above civil action number, he filed a complaint for declaratory judgment, injunctive relief, and damages, naming five Penitentiary officials and the Acting Commissioner of the Bureau of Corrections as defendants in their official capacities. At the same time he filed an "Order to Show Cause" requesting an order pursuant to "Rules

[sic] 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2241",[1] (1) restraining a transfer of plaintiff to the State Correctional Institution at Greensburg, Pennsylvania; (2) restraining an employment termination hearing in reference to plaintiff to be held on July 12, 1973, at the State Correctional Institution at Pittsburgh, Pennsylvania; and (3) restraining defendants from preventing plaintiff from exercising his constitutional rights. Service of the "Order to Show Cause" and the verified complaint was made on each defendant and a hearing was fixed for July 11, 1973, at 10:00 o'clock a. m. Counsel for the defendants appeared and the court heard witnesses for the plaintiff, and the defendant Gilbert Walters in defense.

Upon due consideration of the evidence, it is our opinion that the plaintiff's demand for a preliminary injunction or restraining order, as requested, should not be granted, and that the matter be listed for final hearing on Tuesday, the 4th day of September, 1973, at 10:00 a. m.

At the hearing counsel for the defendants advised the court that the hearing scheduled to be held on July 12, 1973, at the Penitentiary, had been cancelled. It also appeared that the reassignment of the plaintiff to the State Regional Correctional Facility at Greensburg, effective July 6, 1973 (PX 10), had been rescinded on July 11, 1973, at 2:45 p. m., and plaintiff was temporarily reassigned to the Community Treatment Center Area under the direction of Mr. Joseph Pauza at 413 Martin Building, Federal Street, Pittsburgh (court's Ex. 1).

According to the plaintiff, he was hired on January 26, 1971, and nine months later became a tenured civil service employee of the State of Pennsylvania. He was hired as a teacher in the Penitentiary school, performed services in the prison library and acted as a notary. He also was assigned to the Institutional staff, which is a Board consisting of representatives of security, the school, a case worker, and a counsellor. The plaintiff was the school's representative on the staff.

The plaintiff testified that on June 13, 1973, the plaintiff was acting as counsel for an inmate, one David Bridell, at a disciplinary hearing presided over by Major Jasak. At the hearing plaintiff requested Jasak to disqualify himself because of a previous prejudicial remark concerning Bridell made to plaintiff by Jasak on the preceding day. Jasak refused to disqualify himself and during the hearing, Lieutenant Kozakiewcz interfered with plaintiff's cross-examination of a complaining officer. Bridell was denied the right to call a witness. Plaintiff objected to the procedure, was required to leave the room, and when he returned Bridell was found guilty and given a harsh and illegal sentence. The plaintiff objected to the finding and was ejected from the room. If plaintiff's version is true, the hearing was a fiasco.

As a consequence, the following incidents occurred causing serious dissension and hostility among the employees of the Penitentiary and placing the Commissioner of Corrections and the Superintendent on the horns of a perplexing dilemma.

On June 15th, the plaintiff wrote a letter to the Superintendent, as did the inmate Bridell, complaining of the procedure at the hearing and requesting an opportunity to present the case to a fair and impartial tribunal (PX 1). The plaintiff was summoned to the Captain's office twice and searched. The Lieutenant complained to the Superintendent of the plaintiff's conduct at the hearing (PX 2). Plaintiff was removed from his position on the staff. The plaintiff wrote to the Superintendent answering the Lieutenant's allegations and countered with recriminations against the Major and the Lieutenant (PX 3). Over

---

1. We fail to see any application of Title 28 U.S.C. § 2241 which pertains to writs of habeas corpus.

his strenuous protests the plaintiff was searched on June 27th by the Major, Captain and Lieutenant; he was forced to strip naked; his wallet, clothes, books and note pad were examined; a letter to Attorney General Israel Packel and an inmate's Motion (PX 4, 5) were taken from his wallet and retained for several days. The officers threatened to have plaintiff dismissed. If plaintiff's version is true, the strip search was unusual, unwarranted, and humiliating. The plaintiff immediately complained to his superiors and filed an oral grievance with the American Federation of Teachers (Pennsylvania Federation of Teachers). The staff representative of this union requested that plaintiff's grievance be processed (PX 6, 7). The same day plaintiff wrote two letters to Attorney General Packel (PX 8, 9), enclosing PX 1, 2, and 3; copies were sent to the Commissioner, the Superintendent and the Major. In these letters he complained of Major Jasak's illegal conduct at the Bridell disciplinary hearing and other similar hearings and the strip search incident. He requested a full investigation of these matters. On June 29th, a hearing was held by the Superintendent. On the same day, plaintiff filed criminal charges for "Official Oppression" against the Major, Captain and Lieutenant before Magistrate Tucker. A hearing was fixed for August 3, 1973. The Correctional Officers' Union local requested the Superintendent to investigate plaintiff's conduct and remove him from the Penitentiary. On July 3rd, plaintiff aired his grievances to a reporter for the Pittsburgh Forum. The reporter interviewed members of the prison staff who criticized the security personnel and a comprehensive article appeared in the newspaper on July 6th (PX 11). On July 3rd, plaintiff testified under protest at a hearing presided over by the Superintendent at which plaintiff's attorney was barred. Plaintiff was advised that he would be temporarily reassigned to the State Regional Correctional Facility at Greensburg and that a termination hearing was fixed for July 12th. (As heretofore stated, this hearing was cancelled.)

The Superintendent testified that these actions were necessary to enable him to conduct the affairs of the Penitentiary in an orderly manner; that plaintiff had gone outside normal Institutional grievance channels by writing to the Attorney General, bringing criminal charges against the three officers, and taking his complaints to the press,[2] allegedly in violation of an Administrative Directive BC–ADM–009 (DX A).[3] The Superintendent denied that he intended punishment of plaintiff because he exercised his First Amendment rights, but he felt that plaintiff had involved him, the Superintendent, in the turmoil, placed his case in outside hands, and had stymied the normal investigative process of the Institution. Feeling that he was personally involved, the Superintendent consulted Acting Commissioner Werner, and the latter, on July 5th, through the Superintendent, authorized temporary reassignment of plaintiff to the State Regional Correctional Facility at Greensburg, effective July 6th, until a meeting could be held by the Central Office of the Bureau of Corrections to explore the issues (PX 10). As previously stated, this reassignment was changed during the hearing by Commissioner Werner on July 11th (court Ex. 1).

The plaintiff brought his suit in this court against Commissioner Werner, Superintendent Walters and others on July 9th.

It cannot be denied that plaintiff, wittingly or unwittingly, is responsible for a serious disruption between security

---

2. The Superintendent barred the July 6th issue of the Pittsburgh Forum from the Penitentiary fearing it would aggravate the trouble existing among the prison personnel.

3. The directive, inter alia, provides in IV–D that "in no case shall an employee issue statements to the news media or the public in deviation from established grievance procedures."

and treatment personnel at the Penitentiary. Charges and counter-charges have been made. The teachers' union and the guards' union have entered the picture on opposite sides. The plaintiff has proceeded outside the normal grievance channels to obtain vindication. A state of turmoil existed.

A penitentiary is a unique institution fraught with sensitive security hazards and tensions in which the State has a high interest in maintaining safety, discipline and order. In the circumstances we think the Commissioner and Superintendent were justified in temporarily reassigning plaintiff to work outside of the Penitentiary until the administrative hearings are concluded. In their discretion it might have been impractical to reassign or dismiss guard officers pending a resolution of the issues, whereas the temporary reassignment of a teacher may have appeared to be more feasible and reasonable in order to avert further confrontations and possible strikes and inmate action. If, by chance, the plaintiff is discharged, he has his remedy with the Civil Service Commission. At the time of the hearing in this court, plaintiff had not lost his position or salary. Even if plaintiff's exercise of his First Amendment rights was included among the other reasons for his temporary reassignment, when one balances his rights against the interest of the State, viz., to alleviate disruption and turmoil existing in the Penitentiary, we cannot say that the administrative decision was not motivated by good faith and justified.

We conclude that plaintiff's temporary reassignment was not made solely as retribution for his exercise of his First Amendment rights. If the contrary should appear at final hearing, since defendants were acting under color of state law, if plaintiff has been deprived of any rights, privileges or immunities secured to him by the Constitution and laws of the United States, he would be entitled to a declaratory judgment, injunctive relief and damages. Civil Rights Act, 42 U.S.C. § 1983.[4] It appears that plaintiff wants the damages to be assessed by a jury (see complaint). However, historically an employer has a fundamental right to assign employees to positions the employer deems, in the exercise of its managerial discretion, most expedient. The employer generally is allowed to pick the time, place and manner of employment, and, absent contractual restrictions, the employee is required to conform with these requirements. And federal courts are reluctant to intervene in matters of state prison administration, recognizing that a wide latitude for judgment and discretion must be extended to prison officials. Gittlemacker v. Prasse, 428 F. 2d 1, 4 (3d Cir. 1970).

Moreover, it does not appear that plaintiff will suffer irreparable harm if a preliminary injunction is denied.[5] His salary and position have not been affected. In addition, the hearing fixed for July 12, 1973, and plaintiff's transfer to the State Regional Correctional Facility at Greensburg have been cancelled. He has been reassigned to the Pittsburgh Community Treatment Center Area in the vicinity of his residence. It does not appear that the plaintiff has been prevented or chilled up to the present time from writing letters to State offi-

---

4. Section 1983 provides as follows:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. Inmates of Attica Correctional Facility v. Rockefeller, 453 F.2d 12, 20 (2d Cir. 1971) ; Checker Motors Corporation v. Chrysler Corporation, 405 F.2d 319, 323 (2d Cir. 1969) ; Clairol Incorporated v. Gillette Company, 389 F.2d 264, 265 (2d Cir. 1968) ; Societe Comptoir De L'indus., etc. v. Alexander's Dept. St., 299 F.2d 33, 35 (2d Cir. 1962).

cials, giving an interview with the press, lodging a grievance with his Union, bringing criminal charges against Penitentiary officers, and bringing this suit against them in federal court. He seems to have freely exercised the zeal of a crusader to obtain his vindication and correct what he believes are illegal and oppressive procedures.

Therefore, since plaintiff has not convinced us that he will probably succeed at final hearing, and since no irreparable harm has been proved, in our opinion an injunction enjoining defendants in the particulars requested should be refused. Neither will an injunction issue to enjoin future Administrative hearings on the issues involved if deemed advisable by the Bureau of Corrections. We would presume that the hearings will be presided over by impartial personnel and that the testimony will be recorded.

This opinion shall be deemed to embody findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P., 28 U.S.C.A.

An appropriate order will be entered.