**CLAIROL INCORPORATED, Plaintiff-Appellant,**

v.

**The GILLETTE COMPANY, Defendant-Appellee.**

**No. 216, Docket 31653.**

United States Court of Appeals Second Circuit.

Argued Nov. 30, 1967.

Decided Jan. 29, 1968.

Alfred T. Lee, New York City (Weil & Lee, New York City, on the brief), for appellant.

William F. Weigel, New York City (Marie V. Driscoll, and Rogers, Hoge & Hills, New York City, David P. List, Thomas H. Morsch, and Leibman, Williams, Bennett, Baird & Minow, Chicago, Ill., and Maxwell Breslau, Boston, Mass., on the brief), for appellee.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

SMITH, Circuit Judge:

This appeal involves an action for trademark infringement and unfair competition in which the plaintiff, Clairol Incorporated, sought a preliminary injunction restraining The Gillette Company from using the term "Innocent" on any hair dye product. The District Court, Weinstein, J., concluded for a number of reasons that the award of a preliminary injunction would be inappropriate. Clairol Incorporated v. Gillette Company, 270 F.Supp. 371 (E.D.N.Y.1967). A second motion for a preliminary injunction was denied by Judge Dooling. Clairol has appealed from these two actions of the District Court, and the question before us is whether or not the judges below clearly abused their discretion. Societe Comptoir De L'Industrie, etc. v. Alexander's Department Stores, Inc., 299 F.2d 33, 1 A.L.R.3d 752 (2 Cir. 1962); Imperial Chemical Industries Ltd. v. National Distillers and Chemical Corp., 354 F.2d 459 (2 Cir. 1965).

The award of a preliminary injunction is an extraordinary remedy, and will not be granted except upon a clear showing of probable success and possible irreparable injury. Societe Comptoir De L'Industrie, etc. v. Alexander's Department Stores, Inc., supra, 299 F.2d at 35. See also W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871 (2 Cir. 1966). Since we agree with Judge Weinstein that the likelihood that the plaintiff's trademark is valid and worthy of protection is not sufficiently high to warrant granting a preliminary injunction, we find it unnecessary to consider the other grounds upon which he denied the first motion.[1]

Clairol claims that by using the word "Innocent" in shade designations on its hair dye products, it has gained exclusive rights to use of that word in market-

---

1. These included failure to demonstrate infringement by the defendant, failure to demonstrate clean hands, and failure to demonstrate that the plaintiff would be irreparably harmed. As for the second motion, see note 3, infra.

ing such products. In 1964, Clairol chose the words "Innocent Ivory" to describe one of a number of shades in its new "Born Blonde" line of haircolors; at about the same time, "Innocent Beige" was selected as the name for one of a number of shades in its line of "Picture Perfect Instant Color Rinses." Application was made to register both names as federal trademarks. The application for "Innocent Ivory" was withdrawn when it was opposed by the Procter and Gamble Company, manufacturers of Ivory Soap. The "Innocent Beige" application was initially rejected by the Patent Office, the examiner writing:

> Registration on the Principal Register is refused for the reason that the wording sought to be registered is believed to be a color designation used by applicant to distinguish this shade of hair coloring from others it manufactures. As such, the wording serves only to indicate color and does not function as a badge of origin in commerce indicating that the product emanates from the applicant.

The application was then converted to one for registration on the Supplemental Register, and as such was accepted in May, 1965.

There is no question but that Clairol used "Innocent Ivory" and "Innocent Beige" for purposes of designating color. Judge Weinstein found:

> The term Innocent Ivory appears solely on packages of Born Blonde lotion toner which contain the notation "extra light blonde-356." On

these cartons, the words "Clairol," "Born Blonde" and "Lotion Toner" are printed in considerably larger and more distinctive letters. See Exhibit A, item 1. * * * The Innocent Beige color in the Clairol Picture Perfect Instant Color Rinse line is similarly packaged.

270 F.Supp. at 374–376. (Exhibit A is at 375.) [2]

Clairol claims that beginning in early 1966 it initiated steps preparatory to the marketing of a new line of hair dyes, and states in its brief that "By August 3, 1966, there was agreement in the company—as high up as the Vice President in Charge of Marketing—and in the agency that the products should be given the trademark 'Innocent' in the form 'Innocent Blonde.'" An application to register the mark was filed on September 15, 1966.[3]

In November, 1965, the defendant Gillette Company considered using the term "Innocent Color" in connection with a proposed new hair coloring product. A search of the Patent Office records disclosed the presence of plaintiff's "Innocent Beige" on the Supplemental Register, and the application to register "Innocent Ivory." Advised by counsel that these terms were being used as shade designations, Gillette went ahead with its plans, deciding to use "Innocent Color" as part of a descriptive phrase ("Toni Shampoo—easy Haircoloring for Innocent Color") to be used on its packaging and its advertising for the new line.[4]

---

**2.** National distribution began in October, 1964 for Innocent Ivory, and in August, 1965 for Innocent Beige.

**3.** Judge Weinstein found that "Innocent Blonde" had not yet reached the market at the time the motion was argued. Clairol's second motion, before Judge Dooling, asked that Gillette be enjoined from expanding its use of the designation "Innocent Color," and was based chiefly on a claim that "Innocent Blonde" had, after Judge Weinstein's decision, fully reached the market. Judge Dooling properly held that Clairol's case depended upon the strength of its claims to "Innocent"

based on its use of "Innocent Ivory" and "Innocent Beige," and that as to those claims nothing new had been shown.

**4.** Clairol attaches great significance to the fact that defendant's counsel advised it that there were risks involved in the use of "Innocent Color" as the name of the new product, given Clairol's registration of "Innocent Beige" and its reputation for being trademark conscious, whereupon (Clairol alleges) it was decided to employ "Innocent Color" in a prominent fashion but assertedly as a descriptive term. We fail to see how the advice of counsel could have any bearing whatsoever on

The product was placed in full scale commercial distribution in four test-market cities in September, 1966.

Clairol, according to its account, first learned of Gillette's plans on August 23, 1966. This action was instituted on October 13, 1966. Both parties continued to prepare their respective products, Innocent Color (Gillette) and Innocent Blonde (Clairol), for market.[5] Gillette notified Clairol on April 28, 1967 of its final decision to place its Innocent Color line into national distribution. Shortly thereafter, Clairol served its papers for a preliminary injunction.

Judge Weinstein assumed for purposes of the preliminary injunction motion that the allegations in the complaint specifying federal registration of Innocent Beige were sufficient to vest the District Court with jurisdiction. He expressed some doubt on the matter, however, because of Clairol's concession that it was relying solely upon the common law rights acquired by prior use of the marks and that it had no rights by virtue of the registration of "Innocent Beige" on the Supplemental Register. Registration of a mark on the Supplemental Register does nothing to enlarge the substantive rights of the registrant. The Supplemental Register was established by Section 23 of the Lanham Act, 60 Stat. 435, 15 U.S.C. § 1091, as a continuation of the register provided for in section 1(b) of the Trademark Act of March 19, 1920, 41 Stat. 533. The Act of 1920 was for the purpose of enabling persons in this country to register trademarks so that they might obtain registration under the laws of foreign countries. Kellogg v. National Biscuit Co., 71 F.2d 662, 666 (2 Cir. 1934). Registration under that act created no substantive rights. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 322, 59 S. Ct. 191, 83 L.Ed. 195 (1938); Charles Broadway Rouss v. Winchester Co., 300 F. 706, 712–714 (2 Cir.), cert. denied 266 U.S. 607, 45 S.Ct. 92, 69 L.Ed. 465 (1924). The Lanham Act did not provide that registration on the Supplemental Register should differ in this respect from registration under the Act of 1920.[6]

Although registration under the Act of 1920 gave the registrant no substantive rights, it did entitle him to proceed in the federal courts to protect whatever common-law rights he might have in the mark. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, 305 U. S. at 333–336, 59 S.Ct. 191, 83 L.Ed. 195. Moreover, in a case where federal jurisdiction was bottomed upon a substantial allegation of registration under the Act of 1920, and a claim of unfair competi-

the merits of this case, and the manner in which "Innocent Color" is employed by the defendant has no bearing on the question of Clairol's acquisition of trademark rights in "Innocent."

After oral argument, Clairol requested that the record on appeal be opened to receive newly discovered evidence on defendant's decision to use "Innocent Color," or that the cause be remanded to the District Court for consideration of this newly discovered evidence. We denied the request. Neither that action nor anything we have said here precludes Clairol's use of this allegedly newly discovered evidence at trial.

5. Gillette contends that "Innocent Blonde" is a fighting brand. We see no need to discuss the issue on this appeal.

6. Cf. Application of Blue Lake Producers Cooperative, 194 F.2d 126 (C.C.P.A. 1952).

Under 15 U.S.C. § 1094, registrations on the Supplemental Register are explicitly excluded from numerous advantages which may be gained by registration on the Principal Register. Among these are the following: under 15 U.S.C. § 1057(b), a certificate of registration on the Principal Register is prima facie evidence of the validity of the mark, the registrant's ownership, and the registrant's exclusive right to use the mark in interstate commerce (cf. 15 U.S.C. § 1115 (a)); under 15 U.S.C. § 1065, the right of the registrant to use a mark registered on the Principal Register in commerce for goods or services in connection with which it has been in continuous use for five consecutive years subsequent to the registration is (with certain exceptions) incontestable; and under 15 U.S.C. § 1072, registration on the Principal Register is constructive notice of the registrant's claim of ownership.

tion was joined with the infringement claim, federal jurisdiction persisted even if it should be determined that the mark was not a properly registered trademark. Id. at 324–325, 59 S.Ct. 191, 83 L.Ed. 195. Federal jurisdiction in this case is based upon 15 U.S.C. § 1121 and 28 U.S.C. § 1338, and we think it is clear that under those sections the principles of federal jurisdiction in cases such as this one remain as set out by the Supreme Court in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra.[7] There is, therefore, jurisdiction in this case despite any concession by Clairol that it has no rights based upon its registration upon the Supplemental Register.[8]

Turning to the merits, it is clear that Clairol cannot ultimately succeed in this litigation unless it shows that Innocent Ivory and Innocent Beige are terms in which it has acquired trademark rights worthy of protection. As we have said, the probability of such a showing does not reach that degree of likelihood of success necessary to warrant the granting of a preliminary injunction.[9]

7. Cf. Hazel Bishop, Inc. v. Perfemme, Inc., 314 F.2d 399 (2 Cir. 1963).
  15 U.S.C. § 1121 reads:
  The district and territorial courts of the United States shall have original jurisdiction and the courts of appeal of the United States shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.
  28 U.S.C. § 1338 reads:
  (a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases.
  (b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws.

8. Gillette accuses Clairol of having procured registration of "Innocent Beige" by false and fraudulent statements to the Patent Office. Substantiation of this accusation would, of course, put the question of federal jurisdiction in a very different light.

9. At one time there might have been some doubt as to whether questions of validity and infringement in this case should be governed by state or federal law. Judge Rifkind expressed such doubt, in Swarthmore Classics v. Swarthmore Junior, 81 F.Supp. 917 (S.D.N.Y.1949), where the only federal trademark registration involved was under the Trade-Mark Act of 1920, since such registration conferred no substantive rights upon the registrant. Good reasons were advanced, however, for the view that federal law should govern under the 1920 Act as well as under the Trademark Act of 1905. See Philco Corporation v. Phillips Mfg. Co., 133 F.2d 663, 670 n. 4 (7 Cir. 1943) ; and Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trademarks and Unfair Competition, 42 Col.L.Rev. 955, at 984–985 (1942).

  Whatever the situation may have been before 1946, this court said in S. C. Johnson & Son, Inc. v. Johnson, 175 F.2d 176 (2 Cir.), cert. denied 338 U.S. 860, 70 S. Ct. 103, 94 L.Ed. 527 (1949), per Judge Learned Hand, that the Lanham Act of that year "put federal trade-mark law upon a new footing." 175 F.2d at 178. That act, we said, had "created rights uniform throughout the Union, in the interpretation of which we are not limited by local law." Ibid. It is now accepted, we think, that with respect to trademarks registered under the Lanham Act, all questions of validity, ownership, and infringement are federal ones. See Friendly, In Praise of Erie—And of the New Federal Common Law, 39 N.Y.U.L. Rev. 383 (1964), in Benchmarks (1967), p. 155, at 188–190 and cases cited n. 161; Callman, The Law of Unfair Competition and Trade-Marks (2 ed. 1950), § 93.1 (b) ; and Brown & Bigelow v. Remembrance Advertising Products, 279 App. Div. 410, 110 N.Y.S.2d 441 (1952), aff'd 304 N.Y. 909, 110 N.E.2d 736 (1953). Compare Campbell Soup Co. v. Armour & Co., 175 F.2d 795 (3 Cir.), cert. denied 338 U.S. 847, 70 S.Ct. 88, 94 L.Ed. 518 (1949). But see Time, Inc. v. T. I. M. E. Inc., 123 F.Supp. 446, 453 (S.D.Calif. 1954).

  It would seem that marks registered on the supplemental register should be covered by this rule, even though such registration creates no substantive rights. Congress' chief concern in enacting the Lanham Act, as Judge Hand pointed out in S. C. Johnson & Son, Inc. v. Johnson, supra, was to ensure that registered marks

It is elementary that the function of a trademark is to indicate the origin of the products to which it is attached. See, e. g., Elgin National Watch Company v. Illinois Watch Case Company, 179 U.S. 665, 673, 21 S.Ct. 270, 45 L.Ed. 365 (1901); cf. Feathercombs, Inc. v. Solo Products Corporation, 306 F.2d 251, 255 (2 Cir.), cert. denied 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962). Clairol must at least show that the term "Innocent Beige" serves this function in order to obtain protection of it as a valid trademark.

Much stress is laid on the "fancifulness" of "Innocent Beige." But that is not the issue. Were the term for which Clairol seeks protection "Beige," rather than "Innocent Beige," the invalidity of the term as a trademark would of course be patent. The word beige is such a descriptive word as will receive less protection than a fanciful or coined word, on the familiar principle that words in the general vocabulary which all can use to

describe products or services should not be unduly limited. See Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 498 (2 Cir. 1962). Clairol contends that by adding the word "Innocent" to the word "Beige," it has come up with a term which is fanciful and thus deserving of protection, citing Douglas Laboratories Corp. v. Copper Tan, 210 F.2d 453 (2 Cir.), cert. denied 347 U.S. 968, 74 S.Ct. 779, 98 L.Ed. 1109 (1954). But there is a fundamental difference between that case and this one. The fanciful term "Coppertone" was used in that case as the name of the product being marketed, and there was no question but that it served to indicate the product's origin. Here, the very question at issue is whether or not the term "Innocent Beige," which is used not as the name of a product, but instead to designate one of many colors in which the product is marketed, is indicative of origin.[10]

We find on the Clairol trademarks list of April 1, 1966 eighty-four terms claim-

---

receive uniform, national protection, and in this it did not distinguish between registration on the principal register and registration on the supplemental register. See S.Rep. No. 1333, U.S.Code Congressional Service, 79th Congress, 2d Sess. (1946), p. 1274, at 1276–1277.

Under 15 U.S.C. § 1091, a mark is registrable on the supplemental register if it is "capable of distinguishing applicant's goods or services and not registrable on the principal register * * *." Thus most marks registered on the supplemental register will not, *prima facie*, receive protection as valid trademarks, for their very presence on that register indicates a preliminary determination that they are not distinctive of the applicants' goods. Cf. Application of Simmons Company, 278 F.2d 517, 519 (C.C.P.A.1960). (We do not mean to imply that failure to contest a Patent Office determination that a mark is registrable only on the supplemental register is a concession that the mark is not, as used, distinctive of the applicant's goods.) But a mark registered on the supplemental register is not necessarily different in this respect from one registered on the principal register, for while registration on the principal register confers certain advantages (see, e. g., note 6, supra), it does not, taken alone, mean that the mark will be protected.

A mark which will not, *prima facie*, be protected may through use become distinctive of an applicant's goods, and thus receive protection (as well as eligibility for registration on the principal register—see 15 U.S.C. § 1052(f), and 15 U.S.C. § 1095). It may be that problems which arise in determining whether a mark has become distinctive of an applicant's or a registrant's goods will in some cases be similar to those which arise under claims of unfair competition (using "unfair competition" in its narrow sense), which, we have held, are governed by state law. Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774, 780 (2 Cir. 1964), cert. denied 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). But we are not aware that there is potential in this case for conflict between state and federal law, even though "Innocent Ivory" is not federally registered, whereas "Innocent Beige" is. See Note, Developments in the Law—Trade-Marks and Unfair Competition, 68 Harv.L.Rev. 814, 878 (1955).

10. There is no question but that "Innocent Beige" is *capable* of indicating origin or, in other words, of distinguishing Clairol's products, and Judge Weinstein so held. If it were not so capable, it wouldn't even be registrable on the supplemental register.

ed as trademarked hair color shades.[11] Clairol apparently expects the courts to protect each of these which can be said to be "fanciful." But the fancifulness of these terms has nothing to do with whether or not they are indicative of origin. Use of the word "Beige" to describe one of many colors in which a product is marketed would be insufficient to create trademark rights in the word, not only because it is descriptive as part of the general vocabulary, but also because such a use of the word would be indicative of color rather than of origin. Innocent Beige may be fanciful in part rather than descriptive, but it still indicates color.

Clairol points out that a term which serves to indicate the grade or style of a product may also indicate origin, and thus merit trademark status, and contends that a term designating color should receive the same treatment. We are referred to Kiekhaefer Corporation v. Willys-Overland Motors, Inc., 236 F. 2d 423 (C.C.P.A.1956) and five cases decided by the Trademark Trial and Appeal Board of the Patent Office.[12] Clairol seems to contend that any grade or style mark which is intended to also serve as a trademark will receive protection. We do not think that the opinion in *Kiek-*

*haefer* lays down any such proposition. As that court said, the question whether a mark used to designate grade is also a trademark "must be determined on the basis of the particular facts of each case." Intent may be relevant to the determination, but certainly it cannot be conclusive.

■ Assuming that color marks and grade marks should be treated alike, we find no abuse of discretion in Judge Weinstein's determination that Clairol has not made a sufficient showing of trademark use of "Innocent Beige" to warrant a preliminary injunction.[13] But the validity of such an assumption is, we think, at least questionable, for we have serious doubts as to whether color marks are as capable of indicating origin as are style and grade marks. As Judge Weinstein said: "Infinite shadings of color make it possible to attach a fanciful name designation to each, thus preempting a large portion of words suitable for attracting women's attention." 270 F.Supp. at 378. Without some evidence to the contrary, it would seem to us that a product's style or grade is more likely to be identified with the manufacturer than is its color, and that consequently style or grade marks are more capable than color marks of indicating

11. For example, in the "Born Blonde" line, "Baby Blush," "Moonlit Mink," "Silent Snow," and "Winsome Wheat" are listed as registered trademarks, and "Beautiful Beige," "Blissfully Blonde," "Fair Fawn," "Happy Honey," "Innocent Ivory," "Precious Platinum," "Sheer Strawberry," and "Sweet Silver" as unregistered trademarks.

12. Caloric Appliance Corp. v. Knapp-Monarch Company, 137 USPQ 477 (1963); Jones & Laughlin Steel Corp. v. Armco Steel Corp., 139 USPQ 132 (1963); In re Castleton China, Inc., 151 USPQ 744 (1966); In re Castleton China, Inc., 152 USPQ 780 (1967); and In re Shenango Ceramics, Inc., 151 USPQ 746 (1966). In the first of these cases, it was held that the term "Ultramatic," which designated the registrant's top price line of stoves, could also serve a trademark function, and the Board refused to strike a registration of the term. Jones & Laughlin Steel Corp. v. Armco Steel Corp. involved registration of a term originally used merely to describe a grade of stainless steel. The last three cases involved the registrability of pattern designs for china.

13. Judge Weinstein looked, quite properly, to the use made of "Innocent Beige" in labeling and marketing the product. Clairol argues that the size in which a mark is used is not determinative of validity, and that a product may have more than one mark. That may be, but size certainly may be taken into account. Clairol thinks it relevant that in addition to its shade names it uses a number and a generic name to designate each shade. (See Exhibit A, 270 F.Supp. at 375.) But that doesn't mean that the shade name is used for a different purpose. It was certainly no error for Judge Weinstein to find that the primary function of Innocent Beige was to indicate shade, rather than origin. See 1 Nims, The Law of Unfair Competition and Trademarks (4 ed. 1947), § 187.

origin. We note that the Trademark Trial and Appeal Board has refused registration on the Principal Register to terms used to denote color. In re American Cyanamid Co., 135 U.S.P.Q. 455 (TTAB 1962); cf. In re The Mosaic Tile Co., 122 U.S.P.Q. 624 (TTAB 1959).[14] We are cited to no cases in which a color or shade designation has been held (at any level) also to indicate origin and thus to serve as a valid trademark.[15]

It may be that the names chosen to designate colors are more significant in marketing hair dye products than in marketing many other products, and that in some instances the purchasing public will come to identify a particular term used as a color description with a particular manufacturer. If it can be shown that the term is identified with the manufacturer, that the public is motivated to buy the product because of its source, and that a competing use of the term is likely to produce confusion on the part of consumers, then the manufacturer will have a remedy. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, 305 U.S. at 335–336, 59 S.Ct. 191, 83 L.Ed. 195; cf. Chas. D. Briddell, Inc. v. Alglobe Trading Corp., 194 F.2d 416, 419 (2 Cir. 1952). Just as a word which is originally descriptive within the general vocabulary may take on a secondary meaning (see, e. g., Safeway Stores, Inc. v. Safeway Properties, Inc., supra, 307 F.2d at 498–499), so may a word which is originally indicative of color, style, or grade, and not of origin.[16]

█ Judge Weinstein found, however, that there was nothing in the record to show that the term Innocent Beige distinguishes Clairol's products so far as the general consuming public is concerned—or, in other words, nothing to show that the term had acquired the requisite secondary meaning. We see no error in that determination.[17]

Affirmed.

---

14. In both cases, it was thought to be relevant that the manufacturer used a house mark, a product mark, and a color mark.

15. Compare The Tayton Co. v. Revlon Products Corp., 65 USPQ 406 (SDNY, 1945), where the court said in denying a preliminary injunction in a case similar to this one: "It might well be argued that many trade mark terms are used in the cosmetic industry with no thought whatever to identify the maker but only to convey veiled and equivocal promises * * *."

16. Clairol, citing Watkins Products, Inc. v. Sunway Fruit Products, Inc., 311 F. 2d 496 (7 Cir. 1962), cert. denied 373 U.S. 904, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963), and other cases, claims that it has no burden of proving a secondary meaning, but that claim is based upon the misconception that all it need do is show that its mark is suggestive or fanci-

ful, and ignores the basic question, whether or not the mark indicates origin.

17. We attach no particular significance at this stage of the case to affidavits presented in the court below indicating that those in the trade sometimes order from Clairol by color designation, and identify some of the color designations with Clairol. It is the purchasing public, after all, to whom the trademark message is addressed. Cf. Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942).

Gillette requests that we dismiss the action at this point, but we are not sure, on the record before us, that Clairol could not show at trial that "Innocent Beige" has acquired a secondary meaning giving it trademark significance. Moreover, it appears that there may be state law unfair competition claims requiring further development. See 270 F.Supp. at 380.