BONAVENTURE ASSOCIATES, a Partnership consisting of Herbert Sadkin, Trustee, Marfer Corporation, a Florida Corporation, Mortgage Company of America, U.S.A. a Florida Corporation, and East Bon West Real Estate, Inc., a Florida Corporation, Plaintiff,

v.

The FLYER PUBLISHING CORPORATION, a Florida Corporation, Defendant.

No. 83–6516–Civ.

United States District Court, S.D. Florida.

July 26, 1985.

Maurice Garcia, Hollywood, Fla., for plaintiff.

Charles Papy, Jr., Coral Gables, Fla., for defendant.

PAINE, District Judge.

This cause is before the Court on plaintiff's motion for partial summary judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (DE 10); and the parties' cross-motions for summary judgment (DE 23, 30 and 35). The Court has

considered all filings pertinent to these motions.

## FACTS

Plaintiff, BONAVENTURE ASSOCIATES, et al., (hereinafter Bonaventure), is a general partnership organized and existing in accordance with the laws of Florida engaged in providing real estate management and related services throughout Florida and the United States. Plaintiff is the legal owner of the service mark "Bonaventure," registration number 964,851 registered on July 24, 1985.

## ORDER

Defendant is a corporation organized and operating under the laws of Florida. Defendant publishes weekly a newspaper-type advertising flyer called "The Flyer" which boasts 330,000 direct mail copies per issue. It carries classified advertising.

Plaintiff and defendant have both submitted exhibits to the Court showing the use of plaintiff's service mark of which plaintiff complains. Plaintiff publishes a newsletter called "Bonaventure" utilizing marks under registration numbers 1,025,-384 or 1,025,401 or both.

Count I of plaintiff's complaint alleges that the defendant has wrongfully appropriated the full form and substance of its registered marks, which has resulted or which will result in a liklihood of confusion in the mind of the public.

In Count II, plaintiff alleges that the term "Bonaventure" *per se*, and its logo, have obtained a secondary meaning in the eyes of its customers and of other consumers, and that the defendant is attempting to pass-off its services to the public as those of the plaintiff, thereby deceiving the public and exploiting the plaintiff's accumulated goodwill associated with plaintiff's name.

Count III of the complaint alleges that the continued use by defendant of plaintiff's registered marks will blur plaintiff's service mark identification and will tarnish affirmative associations plaintiff's marks have come to convey. Further, plaintiff alleges continued use of its registered marks by the defendant may cause plaintiff's registered marks to enter the public domain.

The defendant asserts 15 U.S.C. § 1115(b)(4) as a defense.

Congress has effected legislation concerning trademarks, (United States Trademark Act of July 5, 1946, as amended, namely 15 U.S.C. §§ 1115–8). It is the alleged violation of this act, also known as the Lanham Act, which is at the center of this dispute. Congress passed the Act realizing the importance of stimulating competition and of protecting consumers.

The ultimate inquiry in most actions for false designation of origin, as with actions for trademark infringement, is whether there exists a 'likelihood that an appreciable number of ordinary prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question.' *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47, (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). (footnote omitted).

*Thompson Medical Co., Inc. v. Pfiezer*, 753 F.2d 208 (2d Cir.1985).

Bonaventure undoubtedly has a right not to have its registered trademark used by another in such a way as to cause confusion in the consuming public's minds or in a way which allows another to benefit from the registrant's goodwill of reputation. The relevant inquiry, then, is whether there is any likelihood that an appreciable number of prudent purchasers is likely to be misled or confused as to the source of defendant's publication. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir.1983); *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857 (5th Cir.1967); *See also, Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112 (2d Cir.1984), and Restatement of Torts §§ 728, 729 (1938). Factors the Court considers in determining the likelihood of confusion are "the type of trademark, the similarity of the design, the sim-

ilarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendant's intent, and actual confusion." *John H. Harland Co.*, 711 F.2d at 972, 973. (citations omitted).

### Defendant's Use of Plaintiff's Registered Mark

#### A. Type of Trademark

■ Plaintiff must have acquired a strong mark (as opposed to a weak mark)—one which has a distinctive quality or has acquired a secondary meaning which is capable of dilution (in order to receive protection), *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.S.2d 538, 545, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977). *Universal City Studios Inc.*, *supra*, 746 F.2d at 120. Plaintiff directs the Court's attention to the fact that it recently prevailed in another trademark infringement case over the service mark "Bonaventure," citing *Bonaventure Associates v. Westin Hotel Co.*, 218 U.S.P.Q. 537 (T.T.A.B.1983). Other than alleging that the plaintiff has infringed the mark of another entity and attempting to argue that the term "Bonaventure" is descriptive of a geographic area, defendant does not dispute the strength of plaintiff's mark.

■ The decision of the Trademark Trial and Appeal Board is dispositive of the validity and ownership of the mark "Bonaventure." Defendant's argument that plaintiff's mark is descriptive of a geographic area is inapposite here. Only where a geographic area has an identifiable name, and then an entity attempts to adopt that geographic name as a service mark, will the mark be deemed weak. *Continental Motors Corp.*, 375 F.2d at 861. Here, any association this geographic portion of unincorporated Broward County has with the name "Bonaventure" is a direct result of the actions of the plaintiff and its predecessors. There seems little doubt that the mark "Bonaventure" is a strong mark for the purposes of this case.

#### B. Similarity of Design

Plaintiff's logo is pictured below.

Defendant has used plaintiff's registered mark in the typeset and size shown below:

**BONAVENTURE EDITION**

It was published above its own name on the masthead of its publication printed as shown below:

Plaintiff's name also appeared on the obverse side of defendant's publication above the space for the addressee's name.

When viewed as a whole, taking into account appearance, sound, and meaning of the marks and the manner in which they are respectively used, the Court cannot say that the stylistic design used by the defendant is so similar to plaintiffs as to be confusing. *John H. Harland Co.*, 711 F.2d at 975–6.

#### C. Similarity of the Products

The defendants distribute a publication which consists mainly of classified advertising directed at certain geographic areas.

Plaintiff is engaged in the providing of real estate management and related land services, development and recreational facilities. However, plaintiff does publish a newsletter format item under its name "Bonaventure." Even though both parties are involved in publishing, the Court does not find that the publications or other services provided by the respective parties are of the same type or are so similar as to cause confusion.

### D. Identity of Retail Outlets and Purchasers

Since both plaintiff's and defendant's publications are directed to appeal to the interests and needs of the persons and/or businesses located within plaintiff's developments, the "customers" of each are virtually identical. This is true even though plaintiff's publication might also be distributed to persons outside Broward County, or even the State of Florida or the United States.

### E. The similarity of Advertising Media Used

Since the type of products offered by the parties is dissimilar, this factor of similarity of advertising media used is not applicable.

### F. Defendant's Intent

■ In a Trademark Infringement case, a defendant's impermissible animus to benefit from another's mark can be determinative of his incurring liability. *Id.* at 977. Other than plaintiff's bare allegations, there is no evidence to support a finding that the defendant either intended to benefit from, or actually did benefit from, the use of plaintiff's service mark in an impermissible way. From the materials before the Court, it seems plain that the defendant was using the term "Bonaventure" to aid its readers and advertisers by denoting that the publication's contents was tailored to the readers in a particular geographical area. Such is a fair use of another's mark. *See, Sony Corporation of America v. Uni-*

*versal City Studios,* 464 U.S. 417, 434, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984).

### G. Actual Confusion

■ Plaintiff has not adduced any evidence from which the Court might find there was any actual confusion, even though this is not necessary for finding the likelihood of confusion. *John H. Harland Co.,* 711 F.2d at 978 (citations omitted).

Title 15 U.S.C. § 1115(b)(4) states in pertinent part:

(b) If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the affidavit filed under the provisions of said section 1065 subject to any conditions or limitations stated therein except when one of the following defenses of defects is established: ...

(4) That the *use of name, term,* of device chargfed to be an infringement *is a use, otherwise than as a trade or service mark,* of the party's individual name in his own business, or of the individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is .descriptive of *and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin; ... (emphasis added).*

It seems plain to the Court that although defendant used plaintiff's service mark, it was a use "otherwise than as a trade or service mark.... used fairly and in good faith to describe to [advertisers and readers its] goods and services...." *Id.,* not an attempt to "pass-off" its services to the public as plaintiff's, or to exploit accumulated goodwill associated with the plaintiff's name. This conclusion is further borne out by the fact that the information column on the second page of the defend-

ant's publication (pictured below) contains no reference at all to the plaintiff's service mark.

Having reviewed the submissions of the parties, it is

ORDERED and ADJUDGED that plaintiff's motion for judgment on the pleadings is denied; that defendant's motion for summary judgment is granted; that plaintiff's cross motion for summary judgment is denied. Further, costs will be assessed against plaintiff upon submission of the appropriate bill of costs to the Clerk of the Court. The Clerk of the Court is directed to enter final judgment against plaintiff in accord with the terms of this order. A bill of costs on the form obtainable from the Clerk of the Court shall be submitted by defendant within 15 days from the date of this order.