**CHARLES OF THE RITZ GROUP, LTD., Plaintiff,**

**v.**

**MARCON, LTD. and Constance L. Melaro, Defendants.**

No. 84 Civ. 2470 (CHT).

United States District Court, S.D. New York.

April 24, 1986.

As Amended June 4, 1986.

---

Paskus Gordon & Mandel, New York City, of counsel; Lile H. Deinard, David S. Klafter, for plaintiff.

Carl E. Person, New York City, HJM Melaro, Arlington, Va., for defendants.

## OPINION

TENNEY, District Judge.

The plaintiff brought this action under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, seeking a declaratory judgment[1] that its use of the word "silk" does not infringe the defendants' registered trademark SILK.[2] The plaintiff now moves for summary judgment on the question of infringement. For the reasons set forth below, the plaintiff's motion is granted.

## BACKGROUND

The plaintiff, Charles of the Ritz Group, Ltd. ("Ritz"), manufactures and distributes perfumes, cosmetics and toiletries under its trademarks CHARLES OF THE RITZ and RITZ. The defendant Marcon, Ltd. ("Mar-

---

1. *See* 28 U.S.C. § 2201.

2. The plaintiff also seeks cancellation of the defendants' trademark on the grounds of misuse and abandonment. The plaintiff, however, has stated that it will withdraw its request for can- cellation if the plaintiff wins the motion for summary judgment on the question of infringe- ment. The defendants have asserted a counter- claim for trademark infringement.

con") is the owner of the registered trademark SILK. The defendant Constance L. Melaro ("Melaro"), is the president of Marcon. Prior to this motion, the plaintiff voluntarily dismissed the action against Melaro.

Marcon registered its SILK mark in 1977 for use in connection with cosmetics and toiletries. Marcon does not manufacture any cosmetics or toiletries, and its distribution of such products is extremely limited. Essentially, Marcon is engaged in the business of licensing the the trademark SILK. See Defendants' Rule 3(g) Statement, ¶ 16. Marcon, however, has no licensees at the present time.

In the spring of 1984, the plaintiff introduced a line of cosmetics which used the word "silk" or a variation of that word to identify certain color shades of its products. The color shades at issue here are: "Silken Rose" and "Spunsilk Pink" for lipstick; "Red Silk" and "Watersilk Pink" for nail lacquer; "Spiced Silk" for cheek glow; "Silken Red" for lip color; and "Handpainted Silks" for eyeshadow.

The defendants protested the plaintiff's use of the above named color designations by sending a cease-and-desist letter to Ritz threatening litigation. As a result, the plaintiff instituted this action for declaratory judgment.

## DISCUSSION

The plaintiff claims, inter alia, that it is using the word "silk" in an ordinary, non-trademark manner and, therefore, the plaintiff's use of the word does not infringe on the defendants' trademark. The Court agrees.

Summary judgment is appropriate where there is no genuine issue of fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. See Warner Bros. Inc. v. American Broadcasting Companies, Inc., 530 F.Supp. 1187, 1197–98 (S.D.N.Y.1982), aff'd, 720 F.2d 231 (2d Cir.1983) (granting summary judgment with respect to a trademark infringement claim); Nina Footwear Co., Inc. v. J.C. Penney Co., Inc., 199 U.S.P.Q. 577, 577 (S.D.N.Y.1978) (same). A review of the record compels the conclusion that there are no genuine issues of fact concerning trademark infringement in the instant case. The defendants failed to present any evidence that would support their argument that the plaintiff is using the word "silk" as a trademark, and the record is devoid of facts showing that any likelihood of confusion exists. See Kazmaier v. Wooten, 761 F.2d 46, 50 (1st Cir.1985) (The court granted summary judgment because "an inference of possible confusion [could not] reasonably be drawn from [the] facts" presented.).[3]

A trademark is a word used by a manufacturer or merchant to identify his goods and to distinguish them from those manufactured or sold by others. See J. Gilson, Trademark Protection and Practice § 2.01 (1977). In order to be a trademark, the relevant term must be used in a manner that is clearly calculated to project to consumers that the trademarked goods originate from a single source. See McGregor-Doniger Inc. v. Drizzle, Inc., 599 F.2d 1126, 1130 (2d Cir.1979).

The fact that a word is a registered trademark does not prohibit the use of that word in all instances. There is a limit to the trademark significance of any word, and not everything that appears on the label of a product has trademark significance. See 1 J. McCarthy, Trademarks and Unfair Competition § 7:1 (1973) ("McCarthy").

The plaintiff contends that its use of the term "silk" is permissible under the "fair use" doctrine, which is codified in Section 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4). The fair use doctrine creates a statutory defense to a claim of infringement when the challenged use of the word is "a use, otherwise than as a trade or

---

**3.** Furthermore, defendants failed to present any evidence of instances of actual confusion. The plaintiff, however, submitted survey evidence that supported a finding of no likelihood of confusion.

service mark ... and [the word is] used fairly and in good faith only to describe to users the goods or services of such party[.]" *Id.* Thus, a word may be used in an ordinary non-trademarked sense. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 12 (2d Cir.1976); *Bonaventure Assoc. v. Flyer Publishing Corp.,* 621 F.Supp. 107, 110 (D.C.Fla.1985); *In re Morganroth,* 208 U.S.P.Q. 284, 287 (T.T.A.B.1980), *Schmid Laboratories v. Youngs Drug Products Corp.,* 482 F.Supp. 14, 20 (D.N.J.1979).[4]

■ In order for a word to act as a trademark, it must be used in such a way that the word's trademark function is readily apparent to the public without extended analysis. *See In Re Morganroth,* 208 U.S.P.Q. at 287; *Proctor & Gamble Co. v. Keystone Automotive Warehouse, Inc.,* 191 U.S.P.Q. 468, 469 (T.T.A.B.1976); McCarthy, § 11:17 at 476. In this instance, the plaintiff's trademarks CHARLES OF THE RITZ and RITZ clearly function in such a manner.

The plaintiff consciously packages and labels its products in such a way that its marks, RITZ and CHARLES OF THE RITZ, are distinctive. The plaintiff's marks appear prominently on every product at issue here and they dominate all other elements on the package or label. The RITZ and CHARLES OF THE RITZ marks are obviously calculated to attract the public's attention and to indicate source. *See Beernuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 938 (10th Cir. 1983).

The word "silk," however, is not being used to identify or distinguish the plaintiff's goods. It is not highlighted or emphasized on the package, and it does not act as an attention-getter. Indeed, the word "silk" is placed in relatively obscure locations, on the back, side, or bottom of the package.

The plaintiff's trademarks, RITZ and CHARLES OF THE RITZ, have distinctive lettering. The word "silk," however, appears in ordinary print, and the word never appears by itself. It is always used as one of several words designating color, e.g., "Watersilk Pink" or "Silken Rose."[5]

Continued use of a mark is important in developing brand recognition and customer loyalty, and the plaintiff maintains and uses its trademarks, RITZ and CHARLES OF THE RITZ, year after year. However, the plaintiff changes the color of its cosmetics from season to season, including those colors that use the word "silk." Indeed, the plaintiff promoted the colors at issue here only during the spring 1984 season; it did not continue promotion of those colors once the spring season had ended.

■ The defendants contend that "silk" is being used as a trademark, rather than being used to describe the plaintiff's products, because (1) silk is not a color, and (2) none of the plaintiff's products contain silk. This argument misses the mark. In considering the question of infringement, the court must focus on the use of the pertinent word, not on its nature or meaning in the abstract. *See Abercrombie & Fitch,*

4. It is also immaterial whether the mark is "suggestive" or "merely descriptive". *See Abercrombie & Fitch,* 537 F.2d at 12. Moreover, non-trademarked use of a word is permissible, even if the word is an incontestable mark. *Id.*

5. The fact that the plaintiff always uses the word "silk" as part of a composite substantially lessens the threat that the public is likely to confuse the plaintiff's products with the defendants' products. Indeed, several tribunals that have considered trademark cases involving the mark SILK, have determined that there is, *per se,* no confusing similarity between the use of the mark SILK and trademarks using the word "silk" as part of a composite. *See, e.g., Melaro v.*

*Pfizer, Inc.,* 214 U.S.P.Q. 645, 649 (T.T.A.B.1982) (POLYSILK and SILKSTICK); *Pacquin-Lester Co. v. Charmaceuticals, Inc.,* 179 U.S.P.Q. 45, (C.C.P.A.1973), *aff'd,* 484 F.2d 1384 (C.C.P.A. 1973) (SILK 'N SATIN) ("The obvious substantial differences between the marks are enough to prevent any reasonable likelihood of confusion, mistake or deception when the marks are applied to the respective goods especially considering the suggestive nature of the term SILK which appellant admits to exist in this field."). *But cf. MarCon, Ltd. v. Merle Norman Cosmetics, Inc.,* 221 U.S.P.Q. 644, 645 (T.T.A.B.1984); *MarCon, Ltd. v. Tova Corp.,* 222 U.S.P.Q. 829 (T.T.A. B.1984).

537 F.2d at 12; *Venetianaire Corp. v. A & P Import Co.,* 429 F.2d 1079, 1081–82 (2d Cir.1970).

The word "silk" has been widely adopted and used in the cosmetics industry. The record shows that numerous manufacturers and distributors include the word "silk," or a derivative of "silk," in the description of their product or in their advertisements. There are also literally dozens of registered trademarks for cosmetics that include the word "silk", e.g., LUSTRA-SILK, SILK 'N SATIN, and RAINSILK.

It does not matter that silk is not a color *per se,* or that the relevant products do not include silk as an ingredient. The word "silk" conjures up the image of something that is soft and smooth and lustrous. It is frequently used in connection with cosmetics or toiletries to suggest that the relevant product has the qualities of silk. The word, for example, may suggest that eyeshadow will look as soft as silk, or lipstick will shine like silk. The word is also used to suggest the desirable result the product will achieve for the consumer, i.e., that use of the product will cause the consumer to have soft hair or smooth skin, or shiny fingernails.

Marcon is essentially trying to hold back a tidal wave. Advertising and sales promotions have made the word "silk" part of a consumer's daily vocabulary,[6] and, using the word in such a manner is sanctioned by the fair use doctrine. *See Eli Lilly & Co.*

v. *Revlon, Inc.,* 577 F.Supp. 477, 485–86 (S.D.N.Y.1983).

Prohibiting the plaintiff from using the word "silk," in the manner in which it has been used, would go far beyond affording the defendant trademark protection; it would essentially grant the defendant a monopoly on the word. *See Clairol, Inc. v. Gillette Co.,* 389 F.2d 264, 269 (2d Cir.1968) ("[W]ords in the general vocabulary which [everyone] can use to describe products or services should not be unduly limited."). The Lanham Act does not afford protection to words, it affords protection to trademarks. Thus, there can be no trademark infringement unless the protected term is being used as a trademark.[7]

There is also no evidence in the record that Ritz acted in bad faith. There is no indication that the plaintiff attempted to pass off its products to the public as being Marcon's products, or that the plaintiff intended to exploit accumulated goodwill associated with Marcon's name. Indeed, it appears highly unlikely that there is any goodwill associated with Marcon's name. As previously noted, Marcon does not manufacture any cosmetics or toiletries. *See* Defendants' 3(g) Statement, ¶ 9. From 1980 to 1985, Marcon purchased less than $1,000 of cosmetics and toiletries for resale.[8] *Id.* Moreover, Marcon has no budget for advertising or promotion, and has never advertised products bearing the

---

**6.** In *Melaro v. Pfizer,* the Trademark Board noted that "the large number of registrations that have been granted to different parties of 'SILK' marks used on related goods [indicates] that this Office has recognized and treated 'SILK' as a weak mark, not subject to exclusive appropriation in the cosmetic field." 214 U.S.P.Q. at 649. Where, as here, the primary word is weakly protected to begin with, minor alterations can effectively negate any confusing similarity. *See Freedom Savings & Loan Assn. v. Way,* 757 F.2d 1176, 1183 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985).

**7.** The Lanham Act was designed to protect a producer or merchant "who has built up a public association with certain products under his trade-mark from having his business taken by somebody else. [The Lanhan Act was not designed] to block the channels of expression by

giving protection to everyone who may go out and appropriate an ordinary descriptive word for his own business use." *Q-Tips, Inc. v. Johnson & Johnson,* 206 F.2d 144, 146 (3rd Cir.), *cert. denied,* 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953). *See also Eli Lilly & Co. v. Revlon, Inc.,* 577 F.Supp. at 486.

**8.** Marcon did successfully license the term SILK to three companies. The first, Spa Formula Cosmetics, Inc., a California corporation, sold a body lotion called SPA Silk, which had revenues of approximately $10,000 per year. That license terminated at the end of 1985 and was not renewed.

Avon and Revlon also paid Marcon a fee for the right to use the word "silk" on certain products. That relationship was discontinued in 1982 and has no bearing on the instant case.

mark SILK in any magazine that has a national circulation.[9] *Id.* at ¶¶ 10, 14.

*Additional Uses of "Silk"*

There is only one further issue that needs to be addressed, and that issue involves the use of the word "silk" in connection with products that are marketed by the plaintiff under trademarks other than the RITZ or CHARLES OF THE RITZ mark. The defendants point out that six of the plaintiff's non-RITZ products use the word "silk" or a derivative of "silk." The defendants contend that such use also constitutes trademark infringement. The Court rejects this argument for precisely the reasons discussed above.

The plaintiff markets products under several different trademarks, including JEAN NATE, BAIN DE SOLEIL, and SENCHAL. Each of these additional marks is separately registered with the Patent and Trademark Office, and each one is separately promoted. Each has a distinctive presentation and trade dress for its packaging and each is maintained from year to year. The plaintiff does not maintain its use of the word "silk" on its non-RITZ products on a consistent year to year basis.

An examination of the plaintiff's non-RITZ products makes it clear that the plaintiff is not using the word "silk" as a trademark. The plaintiff markets a hand lotion which is labelled "JEAN NATE Very Silky Moisturizing Hand & Body Lotion." It is obvious that the term which is being used to identify the source of the product is JEAN NATE. The word "silk" or in this instance its derivative "silky" is not being used as a trademark any more than the word "very" is being used as one. This is evident not only from the context of the

word, but also from the trade dress of the package; JEAN NATE is written in large, bold letters on the box and the bottle, and it is set apart from the other words, which are printed in smaller letters.

The plaintiff also uses the word "silk" on a suntan lotion. The lotion is labelled "BAIN DE SOLEIL Body Silkening Dark Tanning Spray Oil." In addition, the plaintiff uses the word "silk" in connection with bath oil and bath beads: "JEAN NATE Very Silky Moisturizing Bath Beads" and "JEAN NATE Very Silky Moisturizing Bath Oil". The other challenged uses of the word include: (1) "bath silk," (2) "splash n' silk," and (3) "sensuous silk." Because "silk" is not used as a trade mark on any of these products—as evidenced by the context of the word and the trade dress of the products—there is no trademark infringement.

In sum, the Court concludes that the plaintiff is not using the word "silk" as a trademark, and, therefore, the plaintiff's use of the word does not infringe on the defendant's trademark. Accordingly, the plaintiff's motion for summary judgment is granted.

So ordered.

---

**9.** Marcon states that it "has vigorously defended [its] mark by sending cease and desist letters to infringers, ... by opposing applications for trademark registration, and by bringing cancellation proceedings." Defendants' Pre-trial Memorandum at 3. Indeed, the record reflects that Marcon and its predecessor have instituted approximately 50 actions or proceedings in defense of the SILK trademark.

The defendants contend that these actions are directed towards protecting the trademark SILK so that the public will be able to identify Marcon's goods as coming from a single source. However, this seems extremely doubtful given the undisputed facts concerning Marcon's business. It appears to the Court that Marcon is trying to protect its trademark so that Marcon can force manufacturers to pay for the use of the *word.* It appears that Marcon is protecting (and attempting to sell) a word, not a trademark.