**WESTERN PUBLISHING COMPANY, INC., Plaintiff,**

v.

**ROSE ART INDUSTRIES, INC., Lawrence Rosen and Jeffrey Rosen, Defendants.**

**No. 90 Civ. 1243 (RO).**

United States District Court, S.D. New York.

March 23, 1990.

Neil M. Zipkin, Amster, Rothstein & Ebenstein, New York City, for plaintiff.

Robert Epstein, James & Franklin, New York City, for defendants.

## OPINION AND ORDER

OWEN, District Judge:

Plaintiff Western Publishing Company, using the word "Golden" in its logo and otherwise, is and for a long time has been a prominent children's toy and book manufacturer widely known for its "Little Golden Book" products and for various other toys. Defendant Rose Art, a small, sixty-five year old firm also in the toy field, with a long history of manufacturing, among other things, traditional children's wooden framed black slates and crayons, recently developed and commenced selling a writing toy called "Golden Slate." Defendant's

Golden Slate has a rectangular red plastic frame with a plastic face of gold color, on which one can write with a magnet-tipped stylus and can erase by shaking the toy upside-down over one's head. On the bottom border of the package is the Rose Art logo, and, across the top, the words "Magnetic Golden Slate TM."

Plaintiff contends that Rose Art's Golden Slate violates the Lanham Act, arguing possible consumer confusion in that buyers seeing the word "golden" on defendant's package or frame could mistakenly infer that plaintiff was the source of defendant's product. Plaintiff having obtained an ex parte temporary restraining order staying defendant's shipment from inventory, now moves for a preliminary injunction against any further sales. At the close of the hearing, which took place on March 16 and 19, 1990, on the basis of the testimony and exhibits received, I denied plaintiff's motion for a preliminary injunction from the bench, lifted the previously issued temporary restraining order, and made interim findings and conclusions, with this opinion to follow.

Plaintiff is not entitled to preliminarily enjoin defendant from selling its Golden Slate product pending trial because on this record I am unconvinced of any likelihood of consumer confusion as to the source of defendant's product. Accordingly, plaintiff has not shown a likelihood of success on the merits of its claims, and the balance of hardships tips decidedly in favor of the defendant, already delayed by this Court's order in its ability to fill customers' orders from its inventory worth some $250,000. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); *Sublime Products, Inc. v. Gerber Products, Inc.*, 579 F.Supp. 248 (S.D.N.Y.1984); *Puritan Sportwear Corp. v. Shure*, 307 F.Supp. 377 (D.C.Pa.1969).

▬▬ To enforce rights as to the name "golden" as an unregistered trademark,[1]

---

1. Plaintiff does not possess a registered trademark for the word Golden in connection with every conceivable toy or game. Instead, plaintiff has registered "A Little Golden Book" for a series of books, and for the word "Golden" with specific other children's books, puzzles, board or parlor games, and various learning game sets. Lastly, plaintiff has a registered mark in the Golden logo, a bordered picture of an horizon with the word Golden beneath. Obviously, these registrations do not include Golden Slate.

plaintiff must first show that its mark is entitled to protection. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73–74 (2d Cir.1988). The names of colors, because they are merely descriptive, generally may not be protected under the trademark laws. The law does not favor efforts to monopolize a common, frequently used word. *Clairol Incorporated v. Gillette Co.*, 389 F.2d 264, 269–70 (2d Cir.1968); *Charles of the Ritz Group, Ltd. v. Marcon, Ltd.*, 635 F.Supp. 158, 161 (S.D.N.Y.1986). While some trademark protection may be available solely to prevent consumer confusion when a descriptive word has acquired secondary meaning indicative of origin, nevertheless plaintiff may not appropriate to itself the exclusive use of the word "golden" in connection with *every* children's book, toy or game. *Clairol Incorporated v. Gillette Co.*, 389 F.2d at 271; *Frito–Lay, Inc. v. Bachman Co.*, 704 F.Supp. 432 (S.D.N.Y. 1989). The word "golden" denotes color of course, but also adds to any noun an aura of high quality, freshness and warmth. *See* Webster's New Collegiate Dictionary (1979). It is therefore not surprising that "golden" is also registered in connection with thousands of other products, over one-hundred of which are toys, sports or paper products unaffiliated with plaintiff.

■ Accordingly, in determining the likelihood of consumer confusion here, it is necessary to assess the situation against the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), which include the strength of plaintiff's mark, the degree of similarity between them, the proximity of the products, the likelihood that the earlier claimant will bridge the gap, actual confusion, the defendant's good faith in adopting the mark, the quality of defendant's product, and the sophistication of the relevant buyers. *Id.* at 495; *see Centaur Communications v. A/S/M Communications*, 830 F.2d 1217 (2d Cir.1987).

■ As discussed above, "golden," as used by plaintiff, has achieved certain secondary meaning, particularly in the area of children's books and educational toys, satis-fying *Polaroid's* first requirement, although the numerosity of other products bearing the name "Golden" weakens plaintiff's mark. *See Universal City Studios v. Nintendo Co.*, 578 F.Supp. 911 (S.D.N.Y. 1983), *aff'd*, 746 F.2d 112 (2d Cir.1984). However, plaintiff cannot satisfy the second requirement—similarity of the marks —because, as used, the plaintiff's and defendant's marks are easily distinguishable. Plaintiff's various products other than books have either its own Golden logo and design on the package, or "Little Golden Book" or "Golden Book" with another word, such as "Golden Book Music Video." On none of plaintiff's non-book products is the word "golden" used as a color description in conjunction with a simple noun, as in defendant's Golden Slate. *See Charles of the Ritz Group, Ltd. v. Marcon, Ltd.*, 635 F.Supp. at 160 n. 5.

Most of the remaining *Polaroid* factors militate against plaintiff's claim of likely consumer confusion. Although plaintiff and defendant share a common, rather unsophisticated market for their goods, and although plaintiff could hereafter bridge the gap between its products and defendant's, plaintiff has presented no evidence of actual confusion, or complaints, or mistaken orders, or other signs of uncertainty as to source of origin. It appears that Rose Art, long known for its slates, adopted the mark Golden Slate in good faith, and for good reason: it is a fair, accurate and even euphonious description of a slate that is in fact golden. Plaintiff's criticisms of the quality of defendant's product are irrelevant, as they relate to some accompanying papers, not to Golden Slate itself. In any event, the absence of complaints from any of the many consumers to whom the product has been sold renders nugatory plaintiff's claimed critical view of defendant's product.

■ Finally, even if a buyer somehow failed to comprehend that defendant's use of the word "golden" described the physical characteristics of its product, the fair use defense would bar plaintiff from obtaining an injunction. Under the trademark laws, 15 U.S.C. § 1115(b)(4), it is a

defense to an infringement action that the allegedly infringing term "is descriptive of and used fairly and in good faith only to describe to users the goods...." *See, e.g., Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 12–13 (2d Cir. 1976); *Frito–Lay, Inc. v. Bachman Co.,* 704 F.Supp. at 436. This statutory defense applies to actions alleging false designation of origin, as well as simple infringement. *See Soweco, Inc. v. Shell Oil, Co.,* 617 F.2d 1178, 1189 & n. 30 (5th Cir.1980); *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981).

Plaintiff contends that the fair use defense does not apply where the descriptive word employed is used as, or in, the defendant's trademark. In this case, plaintiff argues, the fact that defendant has placed a trademark designation after the title Golden Slate, shows that defendant is using the descriptive word golden as a trademark, not merely to describe, precluding application of the fair use defense.

Plaintiff relies heavily but mistakenly on *Venetianaire Corp. of America v. A & P. Import Co.,* 429 F.2d 1079 (2d Cir.1970), in support of its argument. In that case, a fair use defense failed where the defendant had admittedly copied the descriptive word "hygienic," *along with the fanciful design and packaging,* from plaintiff's registered trademark "Hygient" in connection with mattress covers. *Id.* at 1081. The defendant had not used hygienic to modify or describe another word, but let it stand alone as an apparent trademark. From this mimicry, the District Court found and the Court of Appeals agreed, unremarkably, that the defendant intended to use the trademark to confuse consumers and appropriate plaintiff's good will, not to fairly describe the product. *Id.* at 1082. No such copying, confusion or non-descriptive use of the term "golden" is at issue here, making *Venetianaire* inapposite. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d at 13.

Plaintiff is also unlikely to succeed on the merits of its claim that defendant's Golden Slate infringes plaintiff's exclusive right to the registered mark Magic Slate specifically used on plaintiff's erasable drawing toy, or that there is a likelihood of consumer confusion as to the sources of these two products.

■ Plaintiff's Magic Slate, with its Golden logo, retailing for $1.50 to $2.50, is made of paperboard covered with a piece of opaque plastic, affixed at the top, on which one writes with a blunt-tipped stylus, which writing can then be "erased" by merely lifting the plastic. Defendant's Golden Slate, with its Rose Art logo, is a red plastic box with a gold colored screen, written on by a magnetic pen and erased by shaking the box. Golden Slate retails for $10.00 to $15.00. Obviously the products are strikingly dissimilar.

Nor can the word "slate" describing these products be monopolized by the plaintiff. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d at 9. As an arguably suggestive registered mark, *see Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 73–74, Magic Slate is clearly entitled to protection under some circumstances. However, here, too, application of the *Polaroid* factors suggests little if any likelihood of consumer confusion in this area. Golden Slate and Magic Slate are obviously dissimilar, and that dissimilarity is accentuated in the nature, packaging and presentation of the two toys. *See Essence Communications, Inc. v. Singh Industries,* 703 F.Supp. 261 (S.D.N.Y.1988). As to the use of the word "golden," plaintiff's Golden logo appears in small plain type in the upper left corner of the package, while on defendant's product "Golden" is most prominently placed in large, colored and outlined letters, as the name of the slate itself. Defendant's use of the phrase "Erases like Magic!" used to describe the product's performance is not placed on the package so as to suggest origin, or any relationship to plaintiff's product. *See Charles of the Ritz Group, Ltd. v. Marcon, Ltd.,* 635 F.Supp. at 162.

The remaining *Polaroid* factors demonstrate the impropriety of an injunction to prevent claimed confusion between the Magic Slate and the Golden Slate. As discussed above, plaintiff has introduced no

evidence of actual confusion or bad faith selection of the mark. The obvious price differential and physical differences are such that even the least sophisticated buyer would not be confused as to the relationship of the products or their sources.

Finally, preliminary injunctive relief is unavailable to plaintiff on its state law antidilution claim, since, as discussed above, there is no evidence of bad faith or intentional copying in defendant's adoption of the descriptive name Golden Slate. *See Frito-Lay, Inc. v. Bachman Co.*, 704 F.Supp. 437–38.

Accordingly, the temporary restraining order is lifted, and the motion for preliminary injunction is denied.

So ordered.